[Civ. No. 4606. Second Appellate District, Division One.—April 29, 1927.]

MARY JANE BELL, Respondent, v. MIKE KELLY, Appellant.

[1] LIBEL — SLANDER — UTTERANCE OF DEFAMATORY WORDS — PLEADING—EVIDENCE—VERDICT.—In an action for libel and slander, a verdict for plaintiff upon a count of the complaint alleging that defendant, with the intention of injuring plaintiff in her good name and reputation, and with actual ill will, malice, and hatred toward plaintiff, stated to another that plaintiff had committed perjury in the trial of a certain action and sought to have plaintiff arrested and charged with the commission of such offense, is not supported by evidence that defendant submitted to a deputy district attorney evidence of the commission by plaintiff of the crime of perjury and demanded that a criminal complaint be issued charging her with that offense, where defendant made no statement, either directly or indirectly, that plaintiff had committed perjury, but left the question of the probabilities of whether she had done so to the determination of the deputy district attorney.

[2] ID.—VERDICT—SEGREGATION OF DAMAGES—APPEAL.—In such action, where the verdict was general as to the amount of damages awarded plaintiff, no segregation being made as to the several counts of the complaint, with the exception of specifying the amount awarded for compensatory damages and for punitive damages, and one of the counts was insufficiently supported by the evidence, the appellate court will not segregate the damages as between the various counts.

(1) 37 C. J., p. 69, n. 46. (2) 4 C. J., p. 773, n. 94.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

Anderson & Anderson, John L. Richardson, and T. E. Parke for Appellant.

Weber & Crawford for Respondent.

HOUSER, J.—This is an appeal from a judgment entered on a verdict in an action for libel and slander.

2. See 2 Cal. Jur. 1029; 24 Cal. Jur. 885; 27 R. C. L. 855.

The complaint contained four counts—each of the first two thereof being for both compensatory and punitive damages on account of an alleged libel published by defendant, and each of the last two counts of the complaint being likewise for similar damages alleged to have been occasioned to plaintiff by reason of certain slanderous remarks made by defendant—all of and concerning plaintiff.

The verdict was general in form and, without segregating the damages (if any) as to each count or as to any of the counts of the complaint, awarded to plaintiff for actual damages the sum of $2,500 and for punitive damages the sum of $3,500, making a total damage of $6,000.

[1] The principal attack of appellant regarding the judgment is directed to the fourth count of the complaint, the gravamen of which was that with the intention of injuring plaintiff in her good name and reputation, and with actual ill will, malice, and hatred toward plaintiff, defendant stated to one McClelland that plaintiff had committed perjury in the trial of a certain action and sought to have plaintiff arrested and charged with the commission of such offense.

In effect the sufficiency of the evidence to support the verdict is the question presented—for a determination of which it becomes necessary to examine the evidence in the case which pertains to the point at issue.

In substance the witness, McClelland, testified that he was a deputy district attorney of the county of Los Angeles in charge of the issuance of complaints in that office against persons charged with the commission of criminal offenses; that some time during the month of September, 1921, defendant called to see the witness in his official capacity as such deputy district attorney. In reply to a question as to what conversation occurred at that time between the deputy district attorney and defendant, the witness stated:

"He came in to make a complaint against some one who had been a tenant of one of his buildings, I think, over the tenancy of which there had been some litigation in the superior court of this county. He wanted to lay the facts before the office with a view to having a complaint issued against his tenants for perjury in connection with that litigation. . . . I think he produced at that time, or at a later conversation, a transcript of the testimony of the

party against whom he stated that he wanted a complaint to issue.''

A few days later a second conversation took place between the deputy district attorney and the defendant, in which defendant stated that he wished a complaint against the defendant in a certain action, who the deputy district attorney ''thought'' was the plaintiff in the instant case. The witness further testified: ''He demanded a complaint against the woman for perjury, . . . He told me about this law suit that he had had with this woman over a piece of property down at the beach somewhere, produced a record of her testimony showing that the case had been pending before Judge Valentine on an ouster proceeding of some kind—ejectment proceeding—and he also showed me a copy of a newspaper article reflecting upon the integrity of Judge Valentine, which I think he told me he has inserted in the newspaper himself. . . . He asked if I would issue a complaint for perjury upon that testimony. I told him I would not.''

No criminal complaint was issued for perjury against the plaintiff herein.

In substance defendant testified that when he went to see the deputy district attorney he ''threw him over those nine affidavits, . . . or ten,'' which constituted the ''facts'' which defendant presented to the deputy district attorney and which affidavits theretofore had been prepared by defendant from statements made to him by each of the persons respectively who made the affidavits—at the same time making the statement to the deputy district attorney that ''here are some papers which I think will show that the party has violated the law''; and that prior to presenting the matter to the deputy district attorney he consulted a private attorney who advised him to take it up with the district attorney.

Reduced to somewhat lower terms, the total evidence regarding the charge that defendant stated to the deputy district attorney that plaintiff had committed perjury is that defendant went to the office of the deputy district attorney for the purpose of having a criminal complaint issued against plaintiff; that at said time defendant produced a transcript of testimony given by plaintiff in a certain case; gave the deputy district attorney nine or ten affidavits of different persons which tended to establish the commission of

the crime of perjury by plaintiff; and asked or demanded that a criminal complaint be issued.

The case of *Haub* v. *Friermuth*, 1 Cal. App. 556 [82 Pac. 571], is an authority in point. That was an action for slander, in which the defendant was charged with having spoken of and concerning the plaintiff the following defamatory words:

"I have a man to prove that George Haub struck Richard Schwartz in front of his place of business; that he had two witnesses who had tracked the bloodstains from Haub's shop to the place where Schwartz fell unconscious, and that he had proof that Haub was guilty of the murder of Schwartz."

On cross-examination, which differed from the direct examination in no material respect, one of the witnesses gave the language of the defendant as follows: "He stated that 'they' or 'we' had a witness that had seen Mr. Haub strike Mr. Schwartz; he said he was struck in the butcher-shop and that they had a witness that saw Mr. Haub strike this man. He said there was a witness that had followed Mr. Schwartz up the block and saw him stagger all the way and fall at the corner; and also that there were two witnesses that had traced the blood back to the butcher-shop." A second witness testified that in a certain conversation the defendant stated: "No, I don't believe he had heart disease; somebody hit him because he had a hole in the back of his head. . . . You know that Mr. Haub and Mr. Schwartz had some business troubles and it is George Haub that hit him, . . . ; he did not say 'killed' or 'murdered,' but he said 'hit' him." A third witness testified that the defendant said to him, "Mr. Haub might have killed him anyhow." And a fourth witness testified that defendant said, "If you will follow up Haub pretty close you will find that this man's death came that way, . . . he might have something to do with it."

In ruling upon the question of the sufficiency of the evidence to support the judgment, the court said that the gravamen of the cause of action was that the defendant falsely charged the plaintiff with the murder of Schwartz; that to authorize a recovery it was necessary to prove that defendant *had spoken the words set out in the complaint;* that if the complaint had not set out those words or contained an allegation that they were spoken by the defendant, it would have failed

to state a cause of action, since the other words did not of themselves or by reason of any averments in the complaint charge the plaintiff with the commission of a crime, and proof that the defendant had spoken only *those other words* was equally insufficient to authorize a recovery; and that there was nothing in the testimony which indicated that the defendant had said that he had proof that Haub was guilty of the murder of Schwartz, or that he had uttered any words *substantially the same.*

The facts in the instant case are much weaker than are those in the case just cited. In the case here under consideration, to summarize the evidence, it is disclosed that defendant submitted to the deputy district attorney evidence of the commission by plaintiff of the crime of perjury and demanded that a criminal complaint be issued charging her with that offense. He made no statement, either directly or indirectly, that plaintiff "had committed perjury," as charged against him, but to all intents and purposes left the question of the probabilities of whether she had done so to the determination of the deputy district attorney.

There was nothing other than a surmise which would indicate that defendant had spoken the words regarding plaintiff which are set forth in the fourth count of the complaint; nor is there even a suggestion that he used language, which would be the equivalent of that with which he is charged. So far as appears from the record, all defendant did was to intimate that plaintiff had "violated the law," which is a far cry from a direct or indirect statement that she had committed perjury. It is therefore apparent that as to the fourth count of the complaint the evidence was insufficient to support the verdict.

[2] It will be remembered that the verdict was general as to the amount of damages awarded; that is to say, the damage sustained by plaintiff as to each count of the complaint was not segregated from either or any of the other counts thereof, but, with the exception of specifying the amount awarded for compensatory damages and for punitive damages, respectively, was aggregated into one lump sum. The effect of the joinder in the verdict of damages not specified in amount which were unwarranted in law is obvious. This court cannot determine the amount of the damages which the jury included in its verdict on a cause

of action which was not supported by the evidence. It may have been insignificant as compared to the damages which the jury had in mind as a proper recompense to plaintiff for the wrong caused her by the libelous or slanderous remarks concerning plaintiff, contained in the other three counts, of which the jury found the defendant guilty; or, on the other hand, it may have comprised the greater part of the total amount of the verdict. As was said in the analogous situation in the case of *Lewis* v. *Hayes,* 165 Cal. 527, 534 [Ann. Cas. 1914D, 148, 132 Pac. 1022]: "It is not within our power or province to segregate the general verdict of the jury into its component elements of an award for compensatory and an award for punitive damages."

Appellant specifies several other alleged errors occurring at the trial, but as the point hereinbefore considered is determinative of the question as to whether a new trial should be granted, it becomes unnecessary to devote further attention to the appeal.

The judgment is reversed.

Conrey, P. J., concurred.

Mr. Justice York, deeming himself disqualified, took no part in the decision.