[S. F. No. 5923.   Department Two.—May 29, 1913.]

CARRIE L. LEWIS, Respondent, v. E. A. HAYES and J. O. HAYES, Defendants; MERCURY PUBLISHING COMPANY, (a Corporation), Defendant and Appellant.

LIBEL—NEWSPAPER—CHARGING WOMAN WITH HAVING LEPROSY—DAMAGES TO BUSINESS.—For a newspaper to charge a woman, who was engaged in the business of giving dancing lessons and maintaining a rooming house, with having the disease of leprosy, could not fail to have a direct effect in impairing her revenues from such vocations.

ID.—PRIVILEGED PUBLICATION—STATEMENT MADE IN CONVERSATION OF HEALTH OFFICER AT SOCIAL GATHERING.—The direct charge by a newspaper that a certain person has a loathsome disease cannot be deemed privileged, within the meaning of subdivision 4 of section 47 of the Civil Code, declaring privileged the report of a "public official proceeding, or of anything said in the course thereof," when the only basis for the publication was a casual statement made by a physician, who was the county health officer, in the course of a conversation at a social gathering, to the effect that he had heard that the person in question was afflicted with such disease.

ID.—ERRONEOUS INSTRUCTIONS—MALICE—PUNITIVE DAMAGES.—The instructions to the jury upon the subject of malice, as applied to the law of libel, and upon the general subject of punitive damages, are held to be erroneous.

ID.—MALICE IN FACT NOT PRESUMED—INFERENCE OF MALICE.—In an action for libel, malice in fact is never presumed, but is always to be proved. By proof of the unprivileged character of a publication, libelous *per se*, the jury may infer the existence of this malice, but the inference is always an inference to be drawn by the jury, and is not a presumption which the law has made, or which the court can make for the control of the jury.

ID.—PUNITIVE DAMAGES NOT MATTER OF RIGHT—AWARD WITHIN PROVINCE OF JURY.—In such action it is error to instruct the jury, that upon a finding of malice in fact, the plaintiff is entitled, as of right, to an award of punitive damages. A plaintiff, upon establishing his case, is always entitled of right to compensatory damages. But even after establishing a case where punitive damages are permissible, he is never entitled to them. The granting or withholding of the award of punitive damages is wholly within the control of the jury, and may not be influenced by any direction of the court that in any case a plaintiff is entitled to them. Upon the clearest

proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded.

Id.—General Award of Damages—Appeal—Verdict Intended Merely as Compensatory Damages.—Where the court erroneously instructed the jury that the plaintiff was entitled to an award of punitive damages, upon establishing malice in fact, the appellate court cannot disregard the error, if the award of the jury was general, on the theory that the reasonableness of the verdict shows that it was intended merely for compensatory damages.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

Nicholas Bowden, for Appellant.

Louis Oneal, and Owen D. Richardson, for Respondent.

HENSHAW, J.—Plaintiff sued to recover damages for a libel published of and concerning her in the San Jose *Daily Mercury*, a newspaper owned and published by the defendant and appellant. The complaint charged in two counts; in the first, seeking compensation in the sum of ten thousand dollars for general damages; in the second, seeking compensation in the sum of twenty thousand dollars for special damages alleged to have been occasioned to her by the injury to her lodging-house business and to her business as an instructress in the art of dancing. Trial was had before a jury, which returned a verdict for plaintiff in the sum of $1,792. From the judgment which followed this verdict the Mercury Publishing Company appeals, the evidence being brought up for review by bill of exceptions.

The libel complained of is the following:

"San Jose Teacher is a Victim of Leprosy

"Miss Carrie Lewis, Dancing Instructress, Leaves for Island in the Pacific Ocean.

"It was learned yesterday with great sorrow by the many friends of Miss Carrie Lewis that this woman, who was well known in San Jose for so many years, had contracted the dread disease leprosy. Several physicians of the city have been watching the case with the greatest of care for several days past, and it has been decided by them that the malady

is nothing less than the disease mentioned. The patient of her own will has asked to be taken to the Sandwich Islands, where she may be away from all possibility of infection to others and where she may be treated for the disease she now suffers from.

"Early yesterday morning Miss Lewis was taken from the city and will wait in San Francisco for the steamer which will carry her to her future home in the islands.

"How the patient has contracted this disease the medical profession is at a loss to know, as there appears no reason from the recitation of her life that would point to any means of contracting the disease."

The answer denied that the publication "was and is false and defamatory." It denied all of the allegations of injury and damage to plaintiff and to her business, and it then pleaded that the publication was a privileged publication, herein averring that Dr. William Simpson was the health officer of the county of Santa Clara and *ex-officio* the board of health of the county; that upon the eighteenth day of March "at the city of San Jose in said county of Santa Clara, said health officer and board of health of said county held a public official meeting and proceeding"; that the words contained in the publication complained of "were said and spoken by said health officer in said public official meeting and proceeding in the course thereof," and that "said publication was and is a true and fair report, without malice, of said public official meeting and proceeding and of the words and things said and stated by said health officer in the course thereof." And in this connection it is pleaded that it was brought to the attention of the defendant "that unavoidable mistakes and unintentional errors had been made by said health officer in said official proceedings and in said words and things said by him in the course thereof, and that the initials, first name and name of said plaintiff were used by him instead of the initials, first name and name of another person"; that in the next issue of defendant's paper and in the most conspicuous part thereof the following was published:

"Correction: The statement made in the *Mercury* of Thursday morning to the effect that Miss Carrie Lewis was suffer-

ing from leprosy, and that she was about to leave for the Hawaiian Islands, is not .true. Miss Carrie Lewis has not been ill at all, and her sister, Miss Helen Lewis, is a sufferer from a severe form of eczema, not leprosy, as stated by the *Mercury* by what is regarded as the highest authority. This' paper is glad to know its authority for the statement is wrong and that Miss Lewis is steadily improving in health. This correction is made voluntarily and cheerfully.''

By appellant it is first contended that the evidence fails to show that the respondent suffered any damage to her business. But in this the argument is not so much that the testimony of plaintiff did not in fact establish this damage, for plaintiff testified that following the publication the income from her dancing pupils fell to twenty dollars or thirty dollars a month from one hundred and fifty dollars to two hundred dollars a month as it had been previously, and that following the publication of the article all her roomers, save one, left her house. Appellant's argument goes rather to the inferences which it thinks should be drawn from the testimony. It appears that plaintiff's sister, who had been associated with her in the business of giving dancing lessons and conducting the rooming-house, had become afflicted with a disfiguring, puzzling, and stubborn skin disease, and the argument of appellant is that it was this fact which impaired or destroyed respondent's business. This argument is a reasonable one to be addressed to the jury, but cannot here operate to control the jury's finding. And, as against this argument, it may be said that in the public print to charge this plaintiff with the affliction of so loathsome a disease as leprosy could not fail to have a direct effect in impairing her revenues from her two vocations—the giving of dancing lessons and the maintenance of a rooming-house, each of which involved not only close and constant physical propinquity, but frequently physical contact with her patrons.

The Civil Code (sec. 47, subd. 4) declares a privileged publication to be one made ''By a fair and true report, without malice, in a public journal, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof, or of a verified charge or complaint made by any person to a public official, upon which complaint a warrant' shall have been issued.'' But two facts, each independent of

the other, destroy the asserted privileged character of this publication. The first is that it nowhere purports to be a report of any public official proceeding or of anything said in the course thereof. (*Gilman* v. *McClatchy*, 111 Cal. 606, [44 Pac. 241], *Storey* v. *Wallace*, 60 Ill. 51; *State* v. *Sheridan*, 14 Idaho, 222 [15 L. R. A. (N. S.) 497, 93 Pac. 656; *Ilsley* v. *Sentinel*, 133 Wis. 20, [126 Am. St. Rep. 928, 113 N. W. 425].) And the second is that it was not in fact such a report. The evidence upon this matter is that upon the evening of March 18th there was held a banquet of the Santa Clara Medical Society, which was. attended by Dr. William Simpson, the then county health officer. The banquet was a social and not an official occasion. During its progress a reporter of defendant approached Dr. Simpson and asked him if he had heard that Miss Lewis had leprosy, and the doctor replied that he had so heard. The doctor also said that he had ''heard that arrangements had been made for Miss Lewis, at her own request, to go to the islands.'' Two or three others joined in the conversation, but that was the substance of it. Dr. Simpson was not Miss Lewis's physician and did not pretend that he was. He had no personal knowledge upon the subject and did not pretend that he had. Of the others who joined in the conversation no one asserted any personal knowledge of Miss Lewis's disease, and to this it may be added, as has been previously indicated, that Miss Carrie Lewis, named in the article, was not afflicted with any disease, and that it was her sister, Miss Helen, who was the sufferer.

In instructing the jury upon the subject of malice, as applied to the law of libel, and in instructing upon the general subject of punitive damages, the trial court fell into serious error. It was to minimize the danger of such error that this court has recently felt impelled to enter into these considerations with some elaboration. (*Davis* v. *Hearst*, 160 Cal. 143, [116 Pac. 530].) Something of the confusion in the use of the word ''malice,'' which was adverted to in *Davis* v. *Hearst*, is exemplified by the following excerpts from the instructions in this case: ''One of the necessary elements of libel is malice. If there is no malice there can be no libel. There are two kinds of malice,—namely: Presumed malice called sometimes malice in law and actual malice sometimes called malice in

fact. Presumed malice is that which may be inferred from
a false and unprivileged publication. Actual malice means
personal hatred or ill will and is a spiteful or rancorous dis-
position which induces an act to be done with the intent to
injure the person referred to. While the presumption of
malice attaches to a false and unprivileged publication, this
presumption is not a conclusive presumption. This presumed
malice may be overcome by other proof or evidence that there
was no actual malice or malice in fact. . . . While ex-
emplary damage may be awarded, in a proper case, it cannot
be given unless there is proof of implied or malice in fact.
If you find, from all the evidence, that the publication was
not made with actual malice and that the malice which by
law is inferred has been overcome by other proof or evi-
dence that there was no malice in fact, I charge and in-
struct you that you cannot give or award plaintiff any ex-
emplary, punitive or punishment damages. . . . If you
find that the publication complained of was and is false and
unprivileged, then and in that event I instruct you, as a
matter of law, that said publication being libelous *per se,*
the law presumes, if it is libelous on its face and is false
and unprivileged, but not otherwise, that the publication
was actuated by malice in fact on the part of the publisher,
and that upon its introduction in evidence a *prima facie* case
of malice in fact is established; for, even though it be pre-
sumed malice, it is malice in fact and has all the dignity and
gravity of express or actual malice proven *aliunde.* This
presumption of malice in fact is, however, rebuttable, and
if you find from all the evidence that the agents and servants
of the publisher of the article in question, or any of them
were not actuated by malice in fact as it has been herein-
before in these instructions defined and explained, then and
in that event, it is your duty not to allow any sum of money
for exemplary or punitive damages. But, if you find from
a consideration of the above presumption and of all the evi-
dence that the agents and servants of the publisher of the
article in question, or any of them, were actuated by per-
sonal hatred or ill-will toward the plaintiff in making the
publication complained of, or if you find that such agents or
servants, or any of them, published the article in question
wantonly, recklessly, and with an utter disregard as to

whether it was true or false or unprivileged, and you find in
addition that such article was and is false and unprivileged,
and that all other matters and things necessary to be found
in compliance with these instructions are true, then, in that
event, I charge you the plaintiff is entitled to recover punitive
and exemplary damages.''

Of the injurious nature of these instructions it should be
sufficient to quote the following from *Davis* v. *Hearst,* 160
Cal. 143, [116 Pac. 530] : ''The truth is that malice in fact
is never presumed, but is always to be proved, and the utmost
limit of the law is reached when it is declared that by proof
of the unprivileged character of a publication, libelous *per
se,* the jury may infer the existence of this malice. . . .
But the inference is always an inference to be drawn by
the jury, and is not a presumption which the law has made,
or which the court can make for the control of the jury.''
And upon the subject of punitive damages the following:
''The vice of this instruction is that it tells the jury that,
upon finding malice in fact, the plaintiff is *entitled,* as of
right, to an award of punitive damages. A plaintiff, upon
establishing his case, is always entitled of right to compen-
satory damages. But even after establishing a case where
punitive damages are permissible, he is never entitled to them.
The granting or withholding of the award of punitive dam-
ages is wholly within the control of the jury, and may not
legally be influenced by any direction of the court that in any
case a plaintiff is entitled to them. Upon the clearest proof
of malice in fact, it is still the exclusive province of the jury
to say whether or not punitive damages shall be awarded.
A plaintiff is entitled to such damages only after the jury,
in the exercise of its untrammeled discretion, has made the
award.''

Respondent's answer to this is, first, that the error con-
tained in these instructions was invited error, in that the
instructions themselves embodied declarations of the law
proposed by appellant. But in this the record does not bear
out the statement that the instructions of which appellant
is in fact complaining were either identically or substantially
the same in their pronouncements of law as those which
appellant proposed. The second proposition of respondent
is that, as the general award of the jury is well within the

amount which they might have awarded by way of compensatory damages, this court will hold that in fact the award was made for compensatory damages exclusively. ·This, however, it may not do. Respondent admits and indeed contends that the evidence justifies an award of punitive damages, and she not only argues this, but urged her views upon the court by way of the instructions which the court gave upon the subject. It is not within our power or province to segregate the general verdict of the jury into its component elements of an award for compensatory and an award for punitive damages. So far as this court can be advised, it may be composed of the one or the other or of both. Upon the other hand, it is quite within the power of either litigant to avoid any such embarrassment by providing for separate awards. (*Davis* v. *Hearst,* 160 Cal. 169, [116 Pac. 530].)

No other propositions advanced by appellant upon this appeal call for specific consideration.

For the reasons given the judgment appealed from is reversed and the cause remanded.

Lorigan, J., and Melvin, J., concurred.