[L. A. No. 6895.  In Bank.—March 15, 1923.]

ALFRED SIEMON, Respondent, v. F. C. FINKLE et al., Appellants.

[1] PLEADING — MISJOINDER OF PARTIES — DEMURRER. — Where a misjoinder of parties defendant does not appear upon the face of a complaint, a demurrer upon that ground is properly overruled.

[2] ID.—FAILURE TO PLEAD—WAIVER.—Where a misjoinder of parties defendant is not pleaded, the defense of misjoinder is waived.

[3] CONSPIRACY — PROOF — CIRCUMSTANTIAL EVIDENCE. — A conspiracy is almost always of necessity provable only by circumstantial evidence, that is to say, by inference reasonably deduced from facts proven, as the law recognizes the intrinsic difficulty of establishing a conspiracy by direct evidence; consequently the conspiracy complained of may oftentimes be inferred from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the act, and gen-

erally all of the circumstances preceding and attending the cul-
mination of the claimed conspiracy.

[4] LIBEL—ACTION FOR DAMAGES—PUBLICATION OF LETTERS—JOINT
ACTION—SUFFICIENCY OF EVIDENCE.—In this action for damages
for libel based upon the publication of two letters written by
one of the defendants to the other, it is held that the facts of
the entire transaction warranted the trial court in arriving at the
conclusion and making the finding that the defendants acted in
concert in the publication of the statements.

[5] ID.—PRIVILEGED COMMUNICATIONS—ABSENCE OF MALICE—SECTION
47, CIVIL CODE.—Conceding that a publication comes within the
category of privileged communications, in order to bring it within
the provisions of section 47 of the Civil Code, it is necessary that
there should be an absence of malice.

[6] ID.—MALICE—FINDINGS—SUFFICIENCY OF EVIDENCE.—In this ac-
tion for damages for libel it is held that the evidence supports
the finding that the publication "of each of said letters by each
of said defendants was with malice."

[7] ID.—DEFINITION OF MALICE.—The malice referred to by section
47 of the Civil Code is malice in the popular conception of the
term; that is to say, as a desire or disposition to injure another
founded upon spite or ill will. The absence of malice is the ab-
sence of enmity.

[8] ID. — PROOF OF MALICE. — Malice in fact may be proved either
directly or indirectly—either by direct evidence of the evil motive
or by legitimate inferences to be drawn from other facts and
surrounding circumstances. And for the purpose of ascertaining
the existence or nonexistence of actual malice there may be taken
into consideration not only the general course of defendant's con-
duct toward plaintiff and any specific act or acts tending to
prove or disprove the existence of an evil motive, but also the
internal evidence furnished by the nature of the libel itself.

APPEAL from a judgment of the Superior Court of
Kern County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank M. Gunter and Janeway, Beach & Pratt for Ap-
pellant Finkle.

Foster & Barnhart, McCarthy, Nolan & Freston and
Earl Banta for Appellant McCowan.

Rowen Irwin and W. W. Kaye for Respondent.

8.  Whether malice which will preclude qualified privilege may be
inferred from publication alone, note, 12 L. R. A. (N. S.) 91.

LENNON, J.—This is an action for libel instituted by Alfred Siemon, plaintiff below and respondent here, an' attorney at law, practicing at Bakersfield, against the defendants, F. C. Finkle and Barclay McCowan. The action was based upon the publication of two letters written by, Finkle at Los Angeles to McCowan at Bakersfield and shown by the latter to various persons. Plaintiff's complaint proceeded upon the theory that the two defendants jointly published the letters, to the damage of the plaintiff. The facts of the case as revealed by the pleadings, proof, and findings are as follows: In 1916 plaintiff was discharged from the office of deputy district attorney by defendant McCowan, then district attorney of Kern County. The reason given by McCowan for such discharge was that plaintiff had been using the county's time and its employees for his private practice. Defendant Finkle, having read in Los Angeles papers an account of the discharge of plaintiff and the reasons therefor sent to McCowan the following letter:

"January 20, 1917.
"Personal.

"Mr. Barclay McCowan, District Attorney,
    "Bakersfield, California.

"Dear Sir: The press dispatches convey to me the information that you have discharged a number of your deputies who are threatening you with recall. Should you require any information about one of your former deputies, Mr. Alfred Siemon, whom you have discharged, as to his practices in regard to taking private business, I will be glad to furnish it. He has to my knowledge, undertaken some very questionable business while one of your deputies, and while I have never met him, from what he has been doing, I am convinced that he was not a suitable person to act as deputy district attorney anywhere. I have never met you personally, but I am well known in Bakersfield and should the information I have concerning Mr. Siemon be of interest to you, I will be glad to give you the particulars.                         Very truly yours,
    "FCF/LVH.              (Sgd.)   F. C. FINKLE."

To this letter McCowan replied, thanking the sender "for the information . . . so kindly offered." The reply letter from McCowan also stated that he, McCowan, was

interested, as a ranch owner, in an irrigation project involving the storage of the waters of Kern River, and asked for information and ideas on the subject. This letter concluded with a request that Finkle send to McCowan "the Siemon particulars in a separate letter."

On the twenty-seventh day of January Finkle sent to McCowan a lengthy letter, in which it was stated that plaintiff, while he was deputy district attorney of Kern County, had represented, as an attorney, one Hubbard in litigation which had arisen between said Hubbard and the defendant Finkle. The letter last referred to charged plaintiff with having used information which he had received from Finkle to assist Hubbard in defeating the claims of his creditors, of whom Finkle was one. It also charged plaintiff with having advised Hubbard to go through bankruptcy proceedings for the purpose of avoiding the payment of his just debts, when, as a matter of fact, Hubbard was not insolvent, and with having assisted Hubbard "to put under cover" as much of his property and assets as possible. The letter concludes with the following paragraph:

"As stated to you I have never met Siemon, but from my correspondence with him and the way in which I know he has conspired with Hubbard to assist the latter in defrauding his creditors, I have formed the opinion that he is a shyster of the worst kind which unfortunately now and then are found to exist in the ranks of the legal profession."

Each of the two letters written by Finkle to McCowan forms the basis of a cause of action set out in two separate counts in plaintiff's amended complaint. Both counts allege and proceed upon the theory that the defendants, with the intent of injuring the plaintiff, combined and conspired together with the purpose of publishing the said letters.

[1] Both defendants demurred to the plaintiff's first amended complaint upon the ground, among others, that there was a misjoinder of parties defendant. No misjoinder appearing upon the face of the complaint, and the remaining grounds of demurrer not being well taken, the demurrers were properly overruled.

The respective demurrers of defendants having been overruled, they elected to separately defend against the action and accordingly interposed separate answers. The answer of the defendant Finkle, in addition to denying all of the

material allegations of the complaint, interposed and separately pleaded three additional defenses: (1) misjoinder, (2) privilege, and (3) justification. The defense of defendant McCowan was rested solely upon a denial of the allegations of the plaintiff's complaint. [2] No misjoinder in his behalf was pleaded, and, therefore, in so far as he was concerned the defense of misjoinder was waived. Upon the issues thus raised the case was tried by the court below sitting without a jury, and resulted in a judgment for the plaintiff in the sum of $750 as actual damages, to which was added an award in the sum of $250 against defendant McCowan as punitive damages for a malicious publication.

The trial court found that as to the first letter, "the statements pertaining to the plaintiff were false and defamatory," but that the publication thereof by each of said defendants was not joint and that for that reason plaintiff was not entitled to recover on the first count.

As to the second letter, the trial court found in effect that certain statements therein were false and defamatory and known at the time of their publication by the defendants to be false and that the publication was by each of said defendants and was wanton and malicious and done for the purpose of injuring the plaintiff as an attorney at law and aspersing his good name and standing in his profession. In addition thereto the express finding was made "that the publication of the said letter by each of said defendants was the result of the joint acts of said defendants combining and conspiring together for the purpose of injuring the plaintiff in his name and reputation."

The main contention of defendants urged in support of the appeal is that the evidence falls short of proving a conspiracy to publish the letter in question and is wholly insufficient to support the trial court's finding in that behalf.

With this contention we cannot agree.

[3] A conspiracy is almost always of necessity provable only by circumstantial evidence, that is to say, by inference reasonably deduced from facts proven, and this is so because the law recognizes the intrinsic difficulty of establishing a conspiracy by direct evidence. Consequently the conspiracy complained of may oftentimes be inferred from the nature of the acts complained of, the individual and

collective interest of the alleged conspirators, the situation
and relation of the parties at the time of the commission
of the act, and generally all of the circumstances preceding
and attending the culmination of the claimed conspiracy.
(*Revert* v. *Hesse*, 184 Cal. 295, 301 [193 Pac. 943].)

It may be conceded that the plaintiff failed to prove any
formal agreement between the defendant Finkle and the de-
fendant McCowan concerning a concert of action for the pub-
lication of the statements complained of. [4] Nevertheless,
we think the facts of the entire transaction warranted the
trial court in arriving at the conclusion and making the
finding that the defendants acted in concert in the publica-
tion of said statements.

There are, for instance, the established facts that the de-
fendant Finkle, knowing that the defendant McCowan was
embroiled in a bitter battle, politically, with the plaintiff,
who, with other persons, was endeavoring to procure Mc-
Cowan's recall from the office of district attorney, wrote to
McCowan the letter of January 20th, maliciously making
the false and defamatory accusations against the plaintiff.

Standing alone, these particular facts would not, of
course, suffice to support the finding of a concert of action
between the two defendants in the publication of the state-
ments in question. But they are to be considered in con-
junction with other facts shown in evidence. Thus in this
behalf the further facts will be noted that the defendant
Finkle suggested that defendant McCowan might "require"
the proffered information. And this suggestion, when read
and considered with the context of the entire letter, readily
enough warrants the inference that it was the defendant
Finkle's intent and purpose that defendant McCowan could
and should use the said information for the purpose of
damnifying and defeating the plaintiff Siemon in his pur-
pose to recall the defendant McCowan.

Again, there is the fact shown in evidence that McCowan
requested Finkle to "send the Siemon particulars in a
separate letter." Considered in connection with the facts
above narrated this request of McCowan tended strongly to
warrant and support the inference that it was McCowan's
intent and purpose to suggest to Finkle that the proffered
information when received could, if separately stated, be
more readily and effectively published. And if it be a

fact, as the trial court in effect found, that in keeping with the suggestion and its probable purpose Finkle forwarded the desired information, then it may be fairly said that he was acting in concert with McCowan for the publication complained of. True, the defendant Finkle testified in effect that he expected McCowan to make an independent investigation as to the correctness of the statements contained in the letter, and that "after being tipped off" he expected McCowan to use the information on his own authority. The trial court, however, was not required to accept this testimony at its face value, and in view of the inference readily deducible from the evidence that an independent investigation would have demonstrated Finkle to be a falsifier, the trial court may well have concluded that he was deliberately disseminating false information with the intent and purpose of inducing McCowan to use it against the plaintiff in the recall fight.

Moreover, it may be fairly said, we think, from all of the circumstances involved in the writing and publication of the letters in question, that the act of McCowan in publishing the second letter was the natural and probable result of defendant Finkle's act in writing and sending the same to McCowan. That is to say, under the circumstances existing at the time of the writing and receipt of the letter, the publication by McCowan was a result which Finkle might have reasonably foreseen as likely to occur. This being so, it follows that Finkle's act in writing and sending the letter was the proximate cause of the publication by McCowan. In short, all of the circumstances hereinbefore narrated warrant the inference that the publication by McCowan was in fact a publication contemplated and countenanced by Finkle.

The other two defenses specially pleaded by defendant Finkle, (1) that the letter was a privileged communication under subdivision 3 of section 47 of the Civil Code, and (2) that the defamatory charges were true, cannot be sustained.

[5] Conceding, for the purpose of discussion, that the publication comes within the category of privileged communications, in order to bring the publication in question within the provisions of section 47 it is necessary that there should be an absence of malice. [6] The finding of the trial court that the publication "of each of said letters by

each of said defendants was with malice" is, in our opinion, supported by the evidence. [7] The malice referred to by this section of the Civil Code is malice in the popular conception of the term; that is to say, as a desire or disposition to injure another founded upon spite or ill will. (*Davis* v. *Hearst*, 160 Cal. 143 [116 Pac. 530].) The absence of malice is the absence of enmity. [8] Malice in fact may be proved either directly or indirectly—either by direct evidence of the evil motive or by legitimate inferences to be drawn from other facts and surrounding circumstances. And for the purpose of ascertaining the existence or non-existence of actual malice there may be taken into consideration not only the general course of defendant's conduct toward plaintiff and any specific act or acts tending to prove or disprove the existence of an evil motive, but also the internal evidence furnished by the nature of the libel itself. (*Davis* v. *Hearst, supra.*)

The general tone of the letter, the language employed therein to characterize plaintiff and plaintiff's conduct, considered in the light of defendant's motive for resentment therein disclosed, together with the fact that defendant Finkle unsolicited volunteered the first offer to furnish information about the plaintiff, warrant and support the inference that defendant Finkle was actuated in the publication of the false and defamatory statements by enmity and ill will.

No serious attempt was made at the trial of the case to establish the truth of the defamatory charges. The chief proof offered consisted merely of the reiteration by Finkle of the facts upon which he based his opinion that plaintiff was a "shyster." These facts were those set out in the letter of January 27th, some of which facts were themselves libelous.

It is urged that the testimony of one Thorton, stenographer of McCowan, should have been excluded. Inasmuch as the fact of publication about which Thorton testified was proved by the direct and undisputed testimony of several other witnesses, this testimony was merely cumulative and need not, therefore, be discussed.

Judgment affirmed.

Myers, J., Wilbur, C. J., Waste, J., Lawlor, J., and Seawell, J., concurred.