[L. A. No. 20585. In Bank. Oct. 1, 1948.]

REVEREND A. L. BREWER et al., Respondents, v. SECOND BAPTIST CHURCH OF LOS ANGELES (a Religious Corporation) et al., Defendants; REVEREND J. RAYMOND HENDERSON et al., Appellants.

Jerry Giesler, Meyer M. Willner and Thomas L. Griffith, Jr., for Appellants.

A. Brigham Rose for Respondents.

TRAYNOR, J.—In an action for libel, judgment was entered in favor of plaintiffs for a total of $14,000. Both plaintiffs were members of the Second Baptist Church of Los Angeles. Defendant Henderson was the pastor of the church; defendants Hilton and Hudson were chairman and secretary, respectively, of the board of deacons. Exemplary damages were sought against defendant Henderson only. The jury returned verdicts in favor of each plaintiff for $2,000 general damages against the three defendants and $5,000 exemplary damages against defendant Henderson.

The publication of the defamatory statements followed a controversy in the church over the validity of certain elections to the board of trustees and the board of deacons. Reverend Venerable, a member of the church who had been recently expelled, brought an action to have these elections declared void. His complaint alleged that the church officials were taking steps to withdraw funds of the church and use them against the will of the members who had been wrongfully excluded from the management of the affairs of the church. His attorney joined plaintiffs Brewer and Fisher as coplaintiffs in that action. A demurrer was sustained to Reverend Venerable's amended complaint, and his suit was dismissed. Thereafter, the board of deacons held a meeting, which Reverend Henderson attended. They decided to recommend to the church membership that plaintiffs Brewer and Fisher be expelled from the church because of their action in joining with Reverend Venerable in his suit. Defendants Hilton and Hudson were delegated by the board

to draw up charges for presentation to the church. The text of the charges was left to their discretion. Letters were then sent to plaintiffs informing them that charges would be filed against them at the next meeting of the church, and requesting them to be present. A copy of the charges was enclosed with each letter. Defendant Henderson testified that he read and approved the charges and their transmission to plaintiffs.

Neither plaintiff appeared at the next meeting of the church, when the charges were read to the membership, which then voted to withdraw "the hand of fellowship" from plaintiffs and expel them from the church.

These charges read as follows:

"October 12, 1945. To the membership of the Second Baptist Church, Los Angeles, California, we, the Deacon Board of the above church, at our regular monthly meeting took under serious consideration the recent attempt on the part of two members of our church, aided by a third, recently dismissed from the church, to bring our church into court. One of these men was the Rev. W. A. Venerable, who, because of a recent vile attack upon the deacons and minister, was dismissed from our fellowship. The other was Rev. A. L. Brewer, a non-contributing member, and the other Mr. Eugene Fisher, former trustee, who was put out of office because of his vile spirit and utter disrespect for leadership. We can bring no action against the Rev. Venerable, who under the role of a minister of Jesus, is one of Satan's choicest tools, because he is not a member of our church. If the case had gone to trial this fact would have been brought to light. We do hold the other two, Brewer and Fisher responsible, and do charge them before the church as follows:

"We charge that they both complained to the civil authorities that our elections of 1942 of both deacons and trustees when we enlarged our board were illegal. The judge ruled their complaint false and would not permit trial.

"We charge that they complained that the officers of the church were planning to withdraw church funds from the Liberty Savings Loan Company and the Security-First National Bank and misuse them, and that the judge ruled their complaint false.

"We charge that they amended their complaint to the effect that in our business meetings we failed to send written notice to each and every member. The judge ruled that they were again in error, due to the fact that the church has a constitution, which provides, not for a written notice, but

for the notice of said meetings 'Twice on Sunday, morning and evening prior to said meeting,' Article 13 section C.

"We charge that they both in reality admitted their own error by reason of the fact that they could not find another ground on which to amend their complaint. On the other hand, through their lawyer, they offered not to even try to amend their complaint, if we, the Second Baptist Church would allow them to drop the matter, and we the church pay $175 court cost which they would have to pay if they lost. We refused to let them drop the case.

"We charge that on September 20th, when they had their final opportunity to attempt to amend their complaint and try to get us into court trial, not one of the complainants appeared in court. This was an open acknowledgement of failure and a clear vindication of the correctness with which the business affairs of Second Baptist Church are conducted. In consequence of their failure, the attempted effort to embarrass the officers, minister, and church was automatically dropped, and the judge signed the order compelling them to pay to the court the $175 which had already been paid by our church. This money will be refunded to Second Baptist Church by the complaining parties.

"We further charge that the action of both of these men in attempting to bring us before civil authority on grounds of proven falsity has hurt the prestige and good name of the church, its officers, and minister, because of the widespread newspaper publicity given to it.

"We charge that this attempt to bring the church into court has caused us to spend considerable and unnecessary funds of the church for attorneys fees which we might have used for our church work.

"We finally charge that both of these men have by their unwarranted actions and downright falsehood revealed themselves as totally unworthy of the continued confidence, respect, and fellowship of a great church which they have so grievously wronged.

"We do therefore unanimously recommend that the hand of fellowship be withdrawn from them and they both be excluded from the church.

"The Deacon Board of Second Baptist Church, John H. Hilton, Chairman, R. A. Hudson, Secretary."

A press release reporting the action of the church was given to the local press, and an article that substantially followed the local release appeared in the newspaper, the

National Baptist Voice, a paper of nationwide circulation devoted to the affairs of the Baptist Church. This article reported the ouster of plaintiffs Brewer and Fisher and stated that their charges against the church had been found false by the judge.

Section 45 of the Civil Code defines libel as "a false and unprivileged publication by writing, . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." The charges in this case, if false and unprivileged, were libelous. Because of their alleged falsehoods plaintiffs were charged with having "revealed themselves as totally unworthy of the continued confidence, respect, and fellowship of a great church." They were described as persons willing to lie in order to injure their church. Plaintiff Fisher was charged with a vile spirit, and both plaintiffs were associated with one who "under the role of a minister of Jesus, is one of Satan's choicest tools." The charges were designed to injure plaintiffs' reputations in the church and to cause them to be shunned and avoided. The language was aptly chosen for this purpose.

The evidence was sufficient to warrant the jury's concluding that the charges were false. There was a conflict in the evidence as to whether Reverend Venerable's allegations were in fact false, and the judge in the Venerable action never ruled that they were. The jury could find that neither plaintiff authorized his joinder or understood the significance of the appearance of his name on the complaint and that neither was deliberately bringing false charges against his church.

Defendants contend, however, that the publication of the charges was privileged within the meaning of section 47(3) of the Civil Code. Section 47 provides: "A privileged publication or broadcast is one made . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." ▓ Ordinarily, the common interest of the members of a church in church matters is sufficient to give rise to a qualified privilege to communications between members on subjects relating to the church's interest. (*Slocinski* v. *Radwan*, 83 N.H. 501 [144 A. 787,

63 A.L.R. 643]; Prosser, Torts, 838; and see cases collected in note, 63 A.L.R. 649.) A privilege would exist in this case if the publication had been made without malice and the occasion had not been abused. Recently in *Emde* v. *San Joaquin County etc. Council,* 23 Cal.2d 146, 154 [143 P.2d 20, 150 A.L.R. 916], this court had occasion to consider the scope of the privilege granted by section 47(3) of the Civil Code. It was there said: "Even greater protection is accorded one who makes a statement, in a reasonable manner and for a proper purpose, to persons having a common interest with him in the subject matter of the communication, when the publication is of a kind reasonably calculated to protect or further it. (Civ. Code, § 47, subd. 3; 3 Rest., Torts, § 596; Prosser on Torts, § 94, p. 837; see also 3 Rest., Torts, §§ 594, 595.) For this conditional privilege extends to false statements of fact, although the occasion may be abused and the protection of the privilege lost, by the publisher's lack of belief, or of reasonable grounds for belief, in the truth of the defamatory matter, by excessive publication, by a publication of defamatory matter for an improper purpose, or if the defamation goes beyond the group interest." ▆ Thus the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff (*Davis* v. *Hearst,* 160 Cal. 143, 164 [116 P. 530]; *Snively* v. *Record Publishing Co.,* 185 Cal. 565, 577 [198 P. 1]; *Siemon* v. *Finkle,* 190 Cal. 611, 618 [213 P. 954]), or by any cause other than the desire to protect the interest for the protection of which the privilege is given. (See *Davis* v. *Hearst, supra,* 164; Prosser, Torts, 850; Restatement, Torts, § 603.) ▆ Although there are situations where the protection of the interest involved may make it reasonable to report rumors or statements that the publisher may even know are false (see Prosser, Torts, 851; Restatement, Torts, § 602), ordinarily the privilege is lost if defendant has no reasonable grounds for believing his statements to be true. (*Miles* v. *Rosenthal,* 90 Cal.App. 390, 407 [266 P. 320]; see *Emde* v. *San Joaquin etc. Council, supra;* Prosser, Torts, 851; Restatement, Torts, § 601.) The wisdom of limitations on qualified privileges is well demonstrated by the facts here involved. As a result of the publication of the charges both plaintiffs were expelled from their church. Plaintiff Fisher had been a member of the board of trustees for 25 years. Plaintiff Brewer was an ordained minister of the Baptist Church. His expulsion resulted in

the loss of his membership in the Baptist Ministers Union, and the jury could have concluded that he also lost opportunities to preach in other churches.

█ The question then is whether the evidence is sufficient to support the implied finding of the jury that defendants were motivated by a malicious or other improper motive or published their charges without reasonable grounds for believing them. There is ample evidence in the record to support the inference that Reverend Henderson was motivated either by ill will toward plaintiffs or by a desire to oust any members from the church who would dare to question his administration. While plaintiff Fisher was still a trustee, he served on a committee to select furnishings for the new rectory. Instead of accepting Reverend Henderson's suggestion as to where the furniture should be purchased, he insisted that the committee make an investigation of the furniture market. This led defendant Henderson to remark: "I see I have got to get rid of you, I can't work with you." By the time of the annual meeting of the church in January 1945, the rift between Reverend Henderson and plaintiff Fisher had widened. At that meeting Reverend Henderson addressed the church as follows: "Now, E. W. Fisher has given me headaches ever since I have been here, and if you want me to put this program over you have to give me men I can work with." Plaintiff Fisher assigned as the reason for the rift his refusal to be a mere "yes man" on the board of trustees. At this same meeting a member of the church raised the question whether there were improperly present any nonmembers of the church. After some discussion plaintiff Brewer arose and said: "Brother Moderator, I would like to give the Baptist Church position on that." Reverend Henderson responded: "Nobody asked you anything about the Baptist Church. I have been told you run around here with Hiscox Directory and Roberts Rules of Order under your arm, the watchdog of the church." Reverend Venerable was expelled from the church because he had circulated a pamphlet criticizing Reverend Henderson's administration. At the meeting where Reverend Venerable was expelled, Reverend Henderson refused to allow plaintiff Brewer to speak in Reverend Venerable's defense on the ground that Reverend Brewer was not a member of the church because he had not made a regular pledge. At the meeting at which plaintiffs were expelled, Reverend Henderson refused to

allow Reverend Brewer's son to speak in his father's defense on the same ground. He admitted on cross-examination that he had examined the financial list of the church before the meeting in anticipation of the possibility that Reverend Brewer's son might want to speak in his father's behalf. Reverend Henderson's attitude toward members who sued the church is reflected in his statement in the church bulletin for May 12, 1946: "Any and all members who dare to sue the church will be turned out. They will be kept out as unworthy of our fellowship. Those who have been excluded need not attempt to come back. The peace of the Church must not be again disturbed by them. Read 1 Cor. 6:1. 'Dare any of you, having a matter against another, go to law before the unjust, and not before the saints.' "

The jury could conclude that Reverend Henderson had developed a strong dislike for plaintiffs. They could also conclude that Reverend Henderson wished to free himself of any criticism by expelling his opponents from the church. These facts considered with the language of the opening paragraph of the charges read to the church are clearly sufficient to support a finding of a malicious or improper motive for the publication on the part of Reverend Henderson.

In the case of defendants Hilton and Hudson evidence of an abuse of privilege may be found on the face of the charges themselves. Although malice may not be inferred from the fact alone of the communication of a defamatory statement (Civ. Code § 48), the tenor of the statement may be evidence of malice. (*Davis* v. *Hearst, supra,* 166; *Siemon* v. *Finkle, supra,* 618; *Locke* v. *Mitchell,* 7 Cal.2d 599, 603 [61 P.2d 922].) "On the subject of actual malice it is important to note further that while one may, on a privileged occasion and without malice, publish to the interested persons what may be false, if he honestly believes it to be true, he is not by this rule given a license to overdraw, exaggerate, or to color the facts in his communication. The manner of statement is material upon the question of malice, and if the facts believed to be true are exaggerated, overdrawn, or colored to the detriment of plaintiff, or are not stated fully and fairly with respect to the plaintiff, the court or jury may properly consider these circumstances as evidence tending to prove actual malice, and they may be sufficient for that purpose without other evidence on the subject." (*Snively* v. *Record Publishing Co., supra,* 578.)

█ An examination of the charges read to the church shows that they contained most if not all of the vices condemned in the *Snively* case. The jury could reasonably conclude that in stating that plaintiff Fisher was removed from the board of trustees because of his vile spirit and disrespect for leadership, defendants exaggerated the cause for his dismissal. The description of plaintiff Brewer as a noncontributing member was misleading. Although he made no regular pledge to the church, he gave $55 on one occasion and on another pledged $150 to the building fund. Furthermore, the charges associated plaintiffs with one of Satan's choicest tools.

There is evidence also from which the jury could have inferred that defendants lacked reasonable grounds for believing the charges. This limitation upon qualified privilege is particularly appropriate when, as in this case, a privilege is claimed on the ground that defendants were carrying out their duty of investigating misconduct and reporting the results with their recommendations to the church. Defendant Hilton admitted that he did not interpret the termination of the Venerable action as ''a judicial establishment that the charges set forth in the complaint were downright falsehoods.'' The jury could have found that no investigation was made by the deacons into the question of the validity of the elections, that no attempt was made to learn whether plaintiffs were acting in good faith, and that in drafting their charges defendants Hilton and Hudson were carelessly repeating statements previously made to the congregation by Reverend Henderson. We cannot say, therefore, that the evidence was not sufficient to support the verdict against defendants Hilton and Hudson.

█ Defendant Henderson contends that the following instruction on the question of exemplary damages was prejudicially erroneous:

''You are instructed that, if you should find that the article in question was published wantonly, recklessly, and with an utter disregard as to whether it was true or false, then the plaintiffs are entitled to recover exemplary or punitive damages as well as compensatory damages.''

This instruction was clearly erroneous, for a plaintiff is never entitled as a matter of right to exemplary damages. (*Schomberg* v. *Walker,* 132 Cal. 224, 230 [64 P. 290]; *Davis* v. *Hearst, supra,* 173; *Lewis* v. *Hayes,* 165 Cal. 527, 533

[132 P. 1022, Ann.Cas. 1914D 148]; see *Clark* v. *McClurg*, 215 Cal. 279, 282 [9 P.2d 505, 81 A.L.R. 908].) As this court stated in *Davis* v. *Hearst* and reiterated in *Lewis* v. *Hayes*, in speaking of an instruction nearly identical with the one in question, "The vice of this instruction is that it tells the jury that, upon finding malice in fact, the plaintiff is *entitled*, as of right, to an award of punitive damages. A plaintiff, upon establishing his case, is always entitled of right to compensatory damages. But even after establishing a case where punitive damages are permissible, he is never entitled to them. The granting or withholding of the award of punitive damages is wholly within the control of the jury, and may not legally be influenced by any direction of the court that in any case a plaintiff is entitled to them. Upon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded. A plaintiff is entitled to such damages only after the jury, in the exercise of its untrammeled discretion, has made the award." Reverend Henderson was entitled to the free exercise of the jury's discretion. This right he was denied.

■ Defendants contend finally that the general damages were excessive. A motion for a new trial on this ground, among others, was denied. The question of excessiveness is addressed primarily to the discretion of the trial court, and an award that stands approved by that court will not be disturbed on appeal unless it appears that the jury was influenced by passion or prejudice. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 366 [184 P. 672, 12 A.L.R. 1007].) Upon the record before us we cannot say that the jury was so influenced.

■ The appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial. (*Gasoline Products Co.* v. *Champlin Refining Co.*, 283 U.S. 494, 499 [51 S.Ct. 513, 75 L.Ed. 1188]; see *Robinson* v. *Muir*, 151 Cal. 118, 125 [90 P. 521].) Whether it can or not depends upon the circumstances of each case.

The issue of exemplary damages is separate and distinct from that of actual damages, for they are assessed to punish the defendant and not to compensate for any loss suffered by the plaintiff. ■ The rule that exemplary damages cannot be imposed unless the plaintiff has suffered actual

damages (*Clark* v. *McClurg*, 215 Cal. 279 [9 P.2d 505, 81 A.L.R. 908]; *Haydel* v. *Morton*, 8 Cal.App.2d 730 [48 P.2d 709]) is based on the principle that the defendant must have committed a tortious act before exemplary damages can be assessed. (See McCormick on Damages, 293.) "Such damages are mere incidents to the cause of action and can never constitute the basis thereof." (*Clark* v. *McClurg*, *supra*, at 282.) In view of the jury's verdict and the award of general damages in this case the commission of a tortious act by defendants is established. There is therefore no reason for having a second jury determine that issue.

The rule that exemplary damages must bear a reasonable relation to actual damages (*Wilkinson* v. *Singh*, 93 Cal.App. 337, 345 [269 P. 705]; *Plotnik* v. *Rosenberg*, 55 Cal.App. 408, 411 [203 P. 438]) is designed solely to guard against excessive punitive damages. (McCormick on Damages, *supra*, 298.) Upon a retrial of the issue of exemplary damages the jury can maintain that reasonable relation between general and exemplary damages without having to determine for itself the amount of general damages. The amount of general damages has been properly determined by the first jury. Upon a retrial of the issue of exemplary damages it is only necessary for the second jury to be advised of the amount of general damages already awarded in order that it may maintain a reasonable relation between such damages and the exemplary damages, if any, that it awards. If it fails to do so and awards excessive exemplary damages, there is an adequate remedy by way of an appropriate motion before the trial court or by appeal.

The jury returned a verdict in favor of each plaintiff for $2,000 general damages against the three defendants and $5,000 exemplary damages against defendant Henderson. All defendants are jointly and severally liable on the judgment for general damages. Since there can be no apportionment of the judgment for general damages, a retrial of the issue of general damages as to defendant Henderson would require a retrial of that issue as to defendants Hilton and Hudson, for otherwise Hilton and Hudson would remain jointly and severally liable for general damages, but defendant Henderson would have the benefit of a retrial of that issue. To retry the issue of damages as to all defendants, however, would nullify the judgment for general damages as to defendants Hilton and Hudson, although the judgment has been properly entered against them.

The judgment is reversed insofar as it decrees the recovery of the separate sums of $5,000 from Reverend J. R. Henderson, and the trial court is directed to retry the issue of exemplary damages against him only. In all other respects the judgment is affirmed. Respondents Fisher and Brewer are to recover their costs on the appeal of defendants Hilton and Hudson. Each side is to bear its own costs on this appeal of defendant Henderson.

Gibson, C. J., Carter, J., Schauer, J., and Spence, J., concurred.