114 F.3d 1194
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LAKE'S UNLIMITED, INC., a Minnesota Corporation, Lake's
Minnesota Macaws, Inc., a Minnesota Corporation,
and Cheryl J. Lake, individually,
Plaintiffs/Appellants
v.
Gloria Mae ALLEN, d/b/a Allen's Aviaries, and Does 1-10,
Defendants/Appellees.
 No. 96-15149.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1997.
Decided May 15, 1997.
 
 1
 Before: O'SCANNLAIN and NOONAN, Circuit Judges, and RHOADES,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant Gloria Mae Allen (hereinafter "Allen"), a prominent bird-breeder and aviculturist, delivered a presentation on bird nutrition at a meeting of the Las Vegas Avicultural Society. During the question-and-answer session, a participant asked Allen what type of hand feeding formula she used for baby birds. Allen replied:
 
 
 4
 I wouldn't feed Lake's Parrot Diet to a monkey, and I want you to be aware that Lake's Parrot Company had a group of macaws that had "Proventricular Dilitation Syndrome", commonly called "Macaw Wasting Syndrome", and when it was diagnosed I belonged to the Vet Association and I heard it talked about. The next thing I knew they had an auction and sold those birds, they did not tell anybody what their diagnosis had been, and I am telling you I wouldn't feed their food, because first, I think that was unconscionable, and secondly if their control birds got Macaw Wasting Syndrome, what are yours going to get eating it?
 
 
 5
 See Complaint, ER 4. Plaintiffs Lake's Unlimited, Inc., Lake's Minnesota Macaws, Inc., and Cheryl J. Lake (collectively, "Lake's") responded to Allen's remarks by filing the present action.
 
 
 6
 After the parties consented to the jurisdiction of a magistrate judge, Allen filed a motion for summary judgment. In granting Allen's motion for summary judgment, the trial court held that Allen's statements were privileged under California Civil Code § 47(c)(1).
 
 
 7
 Jurisdiction lies under 28 U.S.C. § 636(c)(3), and we affirm.
 
 STANDARD OF REVIEW
 
 8
 A grant of summary judgment is reviewed de novo. Warren v. City of Calsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261 (1996). The appellate court must determine, viewing the evidence in the light most favorable to Lake's, whether there are any genuine issues of material fact, and whether the trial court correctly applied the relevant substantive law. See Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994). Summary judgment is not proper if material factual issues exist for trial. Warren, 58 F.3d at 441.
 
 DISCUSSION
 
 9
 A. Allen's statement is qualifiedly privileged under California Civil Code § 47(c)(1).
 
 
 10
 A false and defamatory communication may be privileged under California Civil Code § 47(c)(1), which states "[a] privileged publication or broadcast is one made ... (c) In a communication, without malice, to a person interested therein (1) by one who is also interested...." Cal.Civ.Code § 47(c)(1) (West Supp.1997). Within the context of § 47(c)(1), California courts define a communication between "interested persons" as one between persons with a common interest, where the communication is "reasonably calculated to further that interest." Cuenca v. Safeway San Francisco Employees Federal Credit Union, 180 Cal.App.3d 985, 995 (1986) (quoting Kelly v. General Tel. Co., 136 Cal.App.3d 278, 285 (1982)).
 
 
 11
 It is clear that the audience was interested in hearing Allen's views on bird care and nutrition, as audience members attended her presentation. It is likewise clear that Allen herself was interested in bird care and nutrition, as she is a preeminent aviculturist who has spent her life learning about avian nutrition and medicine, and who traveled to Las Vegas to speak on the topic. See Allen Decl., SER 40-47. Even accepting Lake's argument that neither Allen nor the audience attended the presentation specifically to discuss PDS, bird seed, or business ethics, Allen and her audience clearly intended to discuss the general topic of bird care. It is manifest that any discussion of bird care could include discussion of the threats posed to birds by dangerous products and practices, and that a warning regarding such products and practices would further the common interest of proper bird care and nutrition.
 
 
 12
 Nevertheless, in arguing that Allen's statements should not be qualifiedly privileged, Lake's argues that § 47(c) must be narrowly construed. To support its position, Lake's quotes the following passage from Rancho La Costa, Inc. v. Superior Court:
 
 
 13
 The word "interested" as used in the statute refers to a more direct and immediate concern. That concern is something other than mere general or idle curiosity of the general readership of newspapers and magazines. One authority explains the statutory interest as follows: (1) The "interest" applies to a defendant who is protecting his own pecuniary or proprietary interest. (2) The required "relation" between the parties to the communication is a contractual, business or similar relationship, such as between partners, corporate officers and members of incorporated associations, or between union members [and] union officers. (3) The "request" referred to must have been in the course of a business or professional relationship.
 
 
 14
 106 Cal.App.3d 646, 664-65 (1980) (citations and quotations omitted) (alteration in original), appeal dismissed and cert. denied, 450 U.S. 902 (1981). Lake's failed to cite, however, the dispositive ruling in Rancho La Costa: "[w]hile this definition may not be exclusive, it is clear that the case at bench does not qualify for application of the conditional privilege. The strictly limited statutory qualified privilege is inapplicable to a defamatory article published at large to a vast audience in a national magazine." Id. at 665 (emphasis added).
 
 
 15
 The narrow reading of § 47(c)(1) urged by Lake's is at odds with the more inclusive interpretations provided by California Supreme Court precedent. See, e.g., Lundquist v. Reusser, 7 Cal.4th 1193, 1204 (1994) (holding that statements by defendant at seminar to persons interested in horse breeding were made upon privileged occasion under § 47(c)); Brewer v. Second Baptist Church, 32 Cal.2d 791, 796-97 (1948) (noting that common interest of church members ordinarily would give rise to qualified privilege for communication between members on church matters, but holding that plaintiff had provided evidence of malice). Indeed, "the scope of privilege under section 47, subdivision 3 is not capable of precise or categorical definition, and ... its application in a particular case depends upon an evaluation of the competing interest which defamation law and privilege are designed to serve." Institute of Athletic Motivation v. University of Illinois, 114 Cal.App.3d 1, 10-11 (1980).
 
 
 16
 Upon weighing the competing interests in the present case, we find that Allen's remarks are entitled to privilege. The state holds a strong interest in allowing interested parties to communicate on subjects of common interest without the specter of future lawsuits, provided that the speaker is not acting with malice. It is true that Cheryl Lake has a strong interest in maintaining her reputation and deterring false accusations. The California legislature, however, did not include any truthfulness prerequisite for § 47(c)(1) to apply. If Lake's reputation was damaged by Allen's comments, the best remedy may be more speech. To hold otherwise would eviscerate the protection embodied in § 47(c)(1), resulting in a chilling effect on non-malicious communication.
 
 
 17
 B. Lake's has failed to provide any evidence showing that Allen acted with malice.
 
 
 18
 Because Allen has shown that her communications may be qualifiedly privileged under § 47(c)(1), the burden shifts to Lake's to show that Allen is not entitled to protection because she acted with malice. See Lundquist, 7 Cal.4th at 1202-03. Malice is defined as "actual ill will or improper purpose that constitutes an abuse of the occasion and therefore defeats a qualified privilege...." Id. at 1203 n. 9 (quoting 2 Harper, et al., The Law of Torts § 5.29 (1986)). To constitute malice, the "ill will" felt must be "beyond the normal feeling toward a wrongdoer." 5 Witkin, Summary of Cal.Law § 521(b) (9th ed. 1988). Malice may not be inferred from the communication itself. See Cal.Civ.Code § 48 (West 1987).
 
 
 19
 Prior to the present lawsuit, Allen had never met Cheryl Lake. Nor had Allen ever spoken or corresponded with Cheryl Lake. See Allen Decl., SER 41. As such, Allen persuasively argues that she was not motivated by personal animosity toward Cheryl Lake, and that her comments were prompted by her concern for birds' safety and the threat posed to the aviary community by Lake's products and practices. Accordingly, any disdain Allen may have felt because of Lake's practices did not exceed the ordinary hostility felt toward a wrongdoer, and thus, cannot constitute malice under the law. See 5 Witkin, Summary of Cal.Law § 521(b) (9th ed. 1988).
 
 
 20
 Relying on Brewer v. Second Baptist Church, 32 Cal.2d 791 (1948), Lake's argues that the tenor of Allen's speech provides evidence of malice. Under Brewer:
 
 
 21
 if the facts believed to be true are exaggerated, overdrawn, or colored to the detriment of the plaintiff, or are not stated fully and fairly with respect to the plaintiff, the court or jury may properly consider these circumstances as evidence tending to prove actual malice, and they may be sufficient for that purpose without other evidence on the subject.
 
 
 22
 Id. at 799 (citations and quotations omitted). In the present case, however, there is no evidence that Allen exaggerated facts that she believed to be true. Rather, the record merely shows that Allen possibly was mistaken. Contrary to Lake's position, Allen's tone of voice cannot provide evidence of malice, because malice may not be inferred from the statements themselves. See Cal.Civ.Code § 48 (West 1987).
 
 
 23
 Lake's further argues that the fact that Allen failed to investigate the veracity of her remarks provides evidence of malice. Although malice may be established by showing that the defendant lacked a reasonable basis for believing the statement to be true, it is not sufficient to show that a statement was inaccurate or unreasonable. Instead, a plaintiff must show willful falsity or recklessness, so as to imply intentional disregard for or avoidance of accuracy; mere negligence does not constitute malice. Cabanas v. Gloodt Associates, 942 F.Supp. 1295, 1301-02 (E.D.Cal.1996); see also Reader's Digest Ass'n, Inc., v. Superior Court, 37 Cal.3d 244, 258-59 (1984), cert. denied, 478 U.S. 1009 (1986).
 
 
 24
 Although Allen may not have independently verified whether or not the rumors she repeated were true, such does not prove that Allen acted with malice. Rather, Allen's failure to investigate merely shows that she may have been negligent. There is no evidence that Allen did not investigate into the truth of the stories because she willfully avoided the truth.
 
 CONCLUSION
 
 25
 Because Lake's has provided no evidence of malice, Allen's statements are qualifiedly privileged under California Civil Code § 47(c)(1). As Allen's statements are entitled to privilege, we need not reach the other issues raised by the parties on appeal.
 
 
 26
 AFFIRMED.
 
 
 
 *
 The Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3