**NEVADA STATE JOURNAL PUB. CO. et al. v. HENDERSON.**

(Circuit Court of Appeals, Ninth Circuit. December 3, 1923. Rehearing Denied January 7, 1924.)

No. 4006.

1. **Libel and slander** ⬚112(2)—**Evidence held to warrant a finding of actual malice.**

The publication of defamatory matter admittedly false, without inquiry or investigation to ascertain the truth of the charges before publication, and the refusal to retract after publication, *held* to warrant a finding of actual malice, and the imposition of exemplary damages by the jury.

2. **Libel and slander** ⬚48(3)—**Privilege does not extend to publication of untrue statements of fact.**

Privilege in publications respecting a candidate for public office does not extend to the making of untrue statements of facts, or false charges of particular acts of criminality or disgraceful conduct.

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Nevada; Frank S. Dietrich, Judge.

Action at law by Charles B. Henderson against the Nevada State Journal Publishing Company and George B. Kilborn. Judgment for plaintiff, and defendants bring error. Affirmed.

A. Grant Miller, James Glynn, and E. E. Roberts, all of Reno, Nev., and Raymond Benjamin, of San Francisco, Cal., for plaintiffs in error.

Hoyt, Norcross, Thatcher, Woodburn & Henley and Brown & Belford, all of Reno, Nev., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. In the fall of 1920 the plaintiff was a candidate for the office of United States Senator in the state of Nevada. During the campaign preceding the election the defendant, in the Nevada State Journal, published a number of articles concerning the plaintiff and his candidacy. Two of these were entitled "A Promising Record" and "Ghosts of the Past." The present action was instituted against the publishing company and one Kilborn to recover damages for the publication of the two last-mentioned articles, the plaintiff claiming that the first accused him of the crime of bribery and the second of the crime of murder. Inasmuch as no question is made concerning the publication of the articles, or of their libelous character, if false, we deem it sufficient to say in this connection that the inference of the plaintiff is not overdrawn. The complaint contained two causes of action, based on the two publications. The jury returned a verdict in favor of the plaintiff as to both causes of action, against both defendants, for both compensatory and punitive damages. Judgment was entered upon the verdict, and the case is now before us on writ of error.

The brief of the plaintiffs in error contains no formal assignments of error, but it is claimed generally: First, that the evidence was insufficient to justify the verdict as against the plaintiff in error Kilborn; second, that the articles were privileged communications, or the publications were made on an occasion of privilege; and, third, that the evidence was insufficient to justify a verdict for punitive damages.

1. It appears from the testimony that the plaintiff in error Kilborn was the owner of all the stock of the Nevada State Journal Publishing Company for about 10 years prior to October 5, 1920, and was president of the corporation. But it is claimed in his behalf that on the latter date he assigned the stock to his wife, tendered his resignation as an officer of the corporation, and thereafter took no part in the management or control of the paper, and had no part in the publication of the articles complained of. The record shows that the purported assignment from Kilborn to his wife was signed by the wife, and not by Kilborn, and that the stock transfer bears no revenue stamp as required by law. These facts, of course, are not controlling; but they were competent and proper for the consideration of the jury. It further appears that Kilborn was in and about the newspaper office at or about the time of the publication of the two articles; that some of the information contained in the second article was communicated to

him in person after October 5, and immediately before the publication; that when a retraction was demanded, after the publication of the article, he declined to retract, stating that he had in his possession an affidavit upon which the article was based, and that the affidavit justified the publication. No complaint is made of the charge of the court and these facts were ample warrant for the submission of the question of the responsibility of Kilborn for the publication of the libels to the jury, and the verdict is controlling here.

[1] 2. In the discussion of the next question counsel claims that there is a distinction between a privileged communication and a communication on an occasion of privilege; that in the latter case there can be no recovery, except for express malice. In view of the fact that the jury has found actual or express malice here, the distinction is not very material, even if such a distinction exists in law or in fact. We will therefore first direct our attention to the question of actual or express malice. Upon that question the court charged the jury as follows:

"While in a legal sense the malice requisite to constitute libel is implied in the publication of untrue defamatory matter, and further proof thereof, so far as concerns the question of actual damages, is not required, not so when we come to consider the propriety of imposing a penalty or inflicting punitive damages. You cannot award exemplary or punitive damages except for actual malice, or, as is sometimes said, express malice. * * * To constitute such malice the defendant whom you have under consideration must have been actuated by a feeling of spite, or ill will, or malevolence, or the wrongful action must have been so grossly negligent, so wanton, as to import a willingness on the part of the wrongdoer to injure others—a recklessness of the rights of others implying a willful disregard of them."

When we consider the defamatory character of the publications, their admitted falsity, the entire absence of inquiry or investigation to ascertain the truth of the charges before publication, the refusal to retract after publication, the assertion of the substantial truth of the charges in the answers filed a year later, and all the surrounding circumstances, the sufficiency of the evidence to support a finding of actual or express malice is beyond question.

"Turn it as you will, the reason of the rule and the great weight of authority upon the subject lead alike to this conclusion: Exemplary damages may be allowed by the jury, in actions of libel, when, upon a consideration of all the facts and circumstances of the case, they find that the publication has been made with a reckless disregard of the rights and feelings of the person libeled, as well as where they find that it has been inspired by hatred or ill will towards, or an intent to injure, him." Times Pub. Co. v. Carlisle, 94 Fed. 762, 769, 36 C. C. A. 475, 482.

[2] 3. We will now return to the question of privilege. Upon that question the court instructed the jury as follows:

"The mere fact that a man is a public officer, or is a candidate for public office, does not constitute a warrant, either to the ordinary citizen or to a newspaper, to spread false charges against him of criminal acts or disgraceful conduct. In a sense, in becoming a candidate, a man invites close scrutiny and opens his life to the light of publicity. Within the range of good faith a newspaper may properly disclose to the public and advise the electorate of the state of his every act and utterance, and criticize and comment thereon, even with severity and suggest any reasonable inference or implication therefrom bearing upon the fitness or qualification faithfully or efficiently to discharge his duties as a public officer, or his qualifications for the

office which he seeks. But the distinction must be drawn between comment and criticism, and untrue charges of facts constituting a crime or disgraceful conduct. It is one thing to pass severe criticism upon, or to draw even extreme inferences from, acknowledged facts, or to indulge in intemperate denunciation, even though bitter, and quite another thing to assert the existence of particular acts of criminality or of shameful misconduct upon the candidate's part. Neither the newspaper nor the citizen may with impunity falsely charge the candidate or the public officer with specific acts of criminality or shameful misconduct."

This instruction is in harmony with the great weight of authority. Commonwealth v. Clap, 4 Mass. 163, 3 Am. Dec. 212; Rearick v. Wilcox, 81 Ill. 77; King v. Root, 4 Wend. (N. Y.) 113, 21 Am. Dec. 102; Sweeney v. Baker, 13 W. Va. 158, 31 Am. Rep. 757; Upton v. Hume, 24 Or. 420, 33 Pac. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863; Post Pub. Co. v. Moloney, 50 Ohio St. 71, 33 N. E. 921; Eikhoff v. Gilbert, 124 Mich. 353, 83 N. W. 110, 51 L. R. A. 451; Post Pub. Co. v. Hallam, 59 Fed. 530, 8 C. C. A. 201.

Other questions not discussed in the briefs were referred to upon the argument, but are not of sufficient importance to call for special consideration.

There is no error in the record, and the judgment of the court below is affirmed.