**REYNOLDS et al. v. ARENTZ.**
**No. 999.**

United States District Court,
D. Nevada.
Feb. 12, 1954.

Ralph L. Denton, Elko, Nev., for plaintiffs.

Hawkins, Rhodes & Hawkins, Reno, Nev., for defendant.

FOLEY, District Judge.

Ruth L. Reynolds and Sherman F. Reynolds, citizens of the State of Utah, set forth in their complaint three causes of action each alleging libel by the defendant Samuel S. Arentz, a citizen of Nevada. By stipulation of the parties, Sherman F. Reynolds was dismissed as a party plaintiff. The second alleged cause of action was abandoned at the trial.

Plaintiff, Ruth L. Reynolds, was, at the time of the publications complained of, the only County Nurse for Lincoln County, Nevada.

Lincoln County, Nevada, while extensive in area, has a population of about 3,837. The matters complained of occurred in the town of Pioche, the county seat. It is reasonable to conclude that action looking to the discharge of a public employee, such as the only County Nurse, taken at a meeting of the Pioche Chamber of Commerce to which the public were invited, would be made known to a considerable number of the inhabitants of the county.

First Cause of Action:

In the complaint the matter complained of in the first cause of action is set out in Paragraph III thereof. The matter which plaintiff considers particularly offensive is in the preambles to the complained of resolution:

"Whereas it appears that the County Nurse has engaged in activities detrimental to the best interests of a large section of the County, and

"Whereas such actions have engendered widespread dissatisfaction with the County Nurse."

On its face the resolution disclosed that its purpose was to have the County Nurse transferred from Lincoln County, or discharged.

Third Cause of Action:

The matter complained of is to be found in Paragraphs II and III of the third cause of action set forth in the complaint. The resolution mentioned in Paragraph II of the third cause of action is the resolution which is the subject matter of the first cause of action.

Paragraph II of the third cause of action alleges that the said resolution was presented by the defendant to a meeting of the Board of County Commissioners of Lincoln County, Nevada, held on the 8th day of May, 1951. Paragraph III of the third cause of action contains a statement made by the defendant to the Board of County Commissioners which, from its context, was made after the presentation of the resolution to the Board.

The picture of the limited hospital and medical services available to Pioche and vicinity is shown in Mr. Arentz' statement before the Board of County Commissioners. His statement contained a recitation of the difficulties encountered by various groups to improve the medical and hospital services of the area. He admitted that Mr. Wolfle had engaged in the practice of medicine to some extent including:

1. The delivery of several babies in the absence of Dr. Mathes and sewing up minor tears after birth of babies.

2. Administration of anesthesia while Dr. Mathes performed surgical operations.

He recited that a person or persons submitted a complaint to the State Medical Board that Mr. Wolfle was practicing medicine without a license and that Dr. Mathes was permitting him to do so under the protection of the Doctor's license to practice, which complaint resulted in an investigation of the Pioche Hospital and Clinic by a representative of the State Medical Board. And Mr. Arentz posed the question in his statement:

"Will anyone deny that the County Nurse guided Mr. Williams around on his investigation in Lincoln County?"

That Mr. Arentz had taken an active part in attempts to provide and improve the hospital and medical services is indicated by his testimony. He testified in effect that during all of the times with which we are concerned here he was Superintendent of the Combined Metals Reduction Company which employed about 400 men in the area; that among his duties he was charged with dealing with labor organizations, providing housing, taking care of medical contracts, and working in the interests of the safety, health and welfare of the employed men and their families; that his company materially aided in the construction of improved hospital facilities. It is to be understood that, if not impossible, it was very difficult to secure the services of physicians and surgeons adequate to serve the community; that Dr. Mathes was the only resident practitioner. It is evident that due to the investigation of the unethical or unlawful practice, Mr. Arentz became fearful that the community might be left without benefit of Dr. Mathes' services and that the community would be left for an indefinite time without the services of a physician and surgeon or without the limited medical services which, up to that time, had been available to the small community. It seems clear that he believed that plaintiff, the County Nurse, had some part in the bringing about of this investigation or its conduct. Under the weight of his views and opinions and fears, he became the moving spirit in an effort to avoid what he considered a threat to the hospital and medical services. This effort on his part culminated in the presentation of the resolution to the Chamber of Commerce, the statement to the County Commissioners and the petition to remove the County Nurse.

In her brief the plaintiff summarizes what she considers to be the evils of defendant's statement to the Board of County Commissioners. She says that by

that statement she has been accused and charged by the defendant of:

1. Trying to tear down and destroy the Pioche Hospital and Clinic.

2. Filing a complaint concerning said Pioche Hospital and Clinic with the Nevada State Board of Medical Examiners, an official agency of the State of Nevada, for the malicious purpose of discrediting Mr. Wolfle, the administrator of the said hospital and Dr. Mathes, who was on the staff of said hospital.

3. Violating the obligation to deal fairly and impartially with all persons and groups of persons.

4. Violating the obligation to exercise judgment, to act without personal prejudice or personal bias.

5. Violating the obligation to maintain the high standards of moral and ethical conduct in both public and personal affairs.

6. Violating the responsibility for enlisting the cooperation and support of the public in furthering the work for which she was employed.

7. Overstepping her capacity as a County Health Nurse by turning in a complaint to an official agency of the State.

8. Using her capacity as County Health Nurse to put weight on her accusation to the State Board of Health.

The above summary of the subject matter of plaintiff's third cause of action, viewed with the evidence adduced, plainly indicates that at the time of the presentation of the resolution to the public meeting of the Chamber of Commerce, defendant was of the opinion that the County Nurse was responsible for the complaint to the State Board of Medical Examiners. However, defendant's subsequent statement to the Board of County Commissioners, when considered with the facts shown by the evidence, indicates that defendant was not so sure that the plaintiff had caused the complaint to be made but that he believed that she was in sympathy with the complaint and had furthered the investigation of it.

It must be recognized that the performance of medical services, as here shown to have been performed by the layman, Mr. Wolfle, was acknowledged by the State Board of Medical Examiners as contrary to medical standards. This the Board took note of by declaring that such practices on the part of Mr. Wolfle should no longer be continued. It thus appears that the complaint to the State Board of Medical Examiners and the investigation which followed were not detrimental to the interests of the county. While it appears from the evidence that the plaintiff had no part in the making of such complaint and that her only activity in relation to it was her compliance with the request of the Board's investigator to aid in his attempts to interview persons who had been treated by Mr. Wolfle, it is apparent that had she made the complaint and actively aided in the investigation of the charges made, she would have been acting in the best interests of the health and welfare of her county.

Does either the resolution or defendant's statement before the County Commissioners, or both taken together, constitute libel or slander per se?

■ Talbot v. Mack, 41 Nev. 245, 262, 169 P. 25:

"3. In determining whether words charged are libelous per se, they are to be taken in their plain and natural import according to the ideas they convey to those to whom they are addressed, reference being had not only to the words themselves but also to the circumstances under which they were used."

The publication of the resolution complained of undoubtedly informed those present at the Chamber of Commerce meeting that it was the opinion of the proponents of the resolution that the County Nurse had been engaged in activities detrimental to the best interests of a large portion of the County and that such activities engendered widespread dissatisfaction with her as County Nurse; and the same view could be taken by the hearers of defendant's state-

ment to the Board of County Commissioners.

█ Further quoting from Judge McCarran's opinion in Talbot v. Mack, supra:

"9. Many courts have attempted to formulate a rule by which may be distinguished words or expressions actionable per se from those which are actionable per quod. Without attempting to follow this example, we think it may be safely stated that words or expressions are actionable per se when their injurious character is a fact of common notoriety and generally so understood where the utterance is published. Words or expressions libelous per quod are such as require that their injurious character or effect be established by allegation and proof."

Then toward the end of the opinion, the Nevada Supreme Court, referring to cases cited by appellant, said:

"12. * * * Many other cases of like significance might be referred to as signifying what courts have held to be language libelous per se. None of them are analogous to the case at bar. In each of the cases to which we have last referred, language is used designating a given person with reasonable certainty and terms or assertions are resorted to in the libelous utterance imputing attributes which, with reference to the person, either by reason of the common use made of the term within the locality or the acceptation of the term or assertion generally, would naturally tend to degrade him in the estimation of his fellow men, or hold him out to ridicule or scorn, or would tend to injure him in his business, occupation, or profession."

█ The resolution and the statement before the Board of County Commissioners, each separately and also when taken together, impute to the plaintiff attributes tending to injure her in her business, occupation and profession.

The question posed above must be answered in the affirmative.

Privilege is asserted by the defendant. That issue as defined by action taken at the pre-trial conference is:

"That the supposed defamatory words concerned the plaintiff in her capacity as County Nurse and as a public employee and servant, and were fair comments made in good faith and without malice upon facts which were a matter of public interest, health and welfare, and were published for the public benefit, and are therefore privileged."

In Nevada State Journal Pub. Co. v. Henderson, 294 F. 60, 62, the Circuit Court of Appeals, Ninth Circuit, reviewed a case concerning a candidate for public office. There the Court approved the following instruction given by Judge Dietrich of Idaho sitting in the Nevada District:

"The mere fact that a man is a public officer, or is a candidate for public office, does not constitute a warrant, either to the ordinary citizen or to a newspaper, to spread false charges against him of criminal acts or disgraceful conduct. In a sense, in becoming a candidate, a man invites close scrutiny and opens his life to the light of publicity. Within the range of good faith a newspaper may properly disclose to the public and advise the electorate of the state of his every act and utterance, and criticize and comment thereon, even with severity and suggest any reasonable inference or implication therefrom bearing upon the fitness or qualification faithfully or efficiently to discharge his duties as a public officer, or his qualifications for the office which he seeks. But the distinction must be drawn between comment and criticism, and untrue charges of facts constituting a crime or disgraceful conduct. It is one thing to pass severe criticism upon, or to draw even extreme inferences from, acknowledged facts, or to indulge in intemper-

ate denunciation, even though bitter, and quite another thing to assert the existence of particular acts of criminality or of shameful misconduct upon the candidate's part. Neither the newspaper nor the citizen may with impunity falsely charge the candidate or the public officer with specific acts of criminality or shameful misconduct."

Art. I, § 9 of the Constitution of the State of Nevada, § 30, Nevada Compiled Laws 1929, is as follows:

"Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions and civil actions for libels the truth may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted or exonerated."

 53 C.J.S., Libel and Slander, § 89, page 143:

"Qualified privilege exists in a larger number of cases than does absolute privilege. It relates more particularly to private interests; and comprehends communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, on a subject matter in which the author of the communication has an interest, or in respect to which he has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty. Briefly stated, a qualifiedly privileged communication is a defamatory communication made on what is called an occasion of privilege without actual malice, and as to such communications there is no civil liability, regardless of whether or not the communication is libelous per se or libelous per quod."

Among the cases cited under the above section is Swift & Co. v. Gray, 9 Cir., 101 F.2d 976, quoting from Corpus Juris as above.

It will be noted that the term "actual malice" is used in the quotation from Corpus Juris. In Chesapeake Ferry Co. v. Hudgins, 155 Va. 874, 156 S.E. 429, 438, the Court pointed out the distinction between imputed malice or malice in law and express malice and actual malice, or, as is sometimes called, express malice and malice in fact. Malice in law, the Court said,

"(2) * * * is a creature of legal fiction invented to meet the legal fiction that has grown up that malice is an essential element of slander and libel, instead of simply declaring that the unprivileged publication of defamatory matter, false in fact, is actionable whether spoken with or without malice, and in such cases the existence of malice is immaterial unless punitive damages be sought. [Citing cases including Davis v. Hearst, 160 Cal. 143, 116 P. 530, 538.]"

The Court further says:

"(3) In the instant case the occasion was qualifiedly privileged, the words spoken were within the scope of the privilege which the occasion created, and the extent of the publication did not go beyond the extent of the privilege.

"In such a case, in order to avoid the privilege it is necessary for the plaintiff to show that the words were spoken with malice in fact, actual malice, existing at the time the words were spoken; that is, that the communication was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff, or what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference and recklessness

as to amount to a wanton or willful disregard of the rights of the plaintiff. [Citing cases.]"

■ From an analysis of the facts presented here, this Court takes the view that the defendant Samuel S. Arentz, as a representative of a corporation employing a considerable portion of the persons engaged in the chief industry of that sparsely settled community, had an interest and duty to promote and encourage the establishment of adequate medical services and hospital facilities for the benefit of his employees and for the welfare of the inhabitants generally. From a consideration of the evidence, the Court is also of the opinion that the resolution prepared by him with the aid of others and his subsequent statement to the Board of County Commissioners were each addressed to persons having a corresponding interest or duty.

The publications complained of do not impute to plaintiff criminal or disgraceful conduct and were made in good faith under the belief on the part of defendant that plaintiff had made or encouraged the complaint to the State Board of Medical Examiners and had participated in the investigation of such complaint, and that defendant believed that such complaint and the investigation threatened to disturb and injure the hospital and medical services, the promotion of which he and his employers had furthered. The Court is also of the opinion that defendant's participation in the preparation of the resolution and his statement before the Board of County Commissioners were not motivated by hatred or ill will toward the plaintiff.

Attention is here called to a portion of the opinion of the Supreme Court of California in Brewer v. Second Baptist Church of Los Angeles, 32 Cal.2d 791, 197 P.2d 713, 717, as follows:

"(3-5) * * * A privilege would exist in this case if the publication had been made without malice and the occasion had not been abused. Recently in Emde v. San Joaquin County, etc., Council, 23 Cal.2d 146, 154, 143 P.2d 20, 25, 150 A.L.R. 916, this court had occasion to consider the scope of the privilege granted by section 47(3) of the Civil Code. It was there said: 'Even greater protection is accorded one who makes a statement, in a reasonable manner and for a proper purpose, to persons having a common interest with him in the subject matter of the communication, when the publication is of a kind reasonably calculated to protect or further it. Civ.Code, § 47, subd. 3; 3 Rest., Torts, sec. 596; Prosser on Torts, sec. 94, p. 837; see also 3 Rest., Torts, secs. 594, 595. For this conditional privilege extends to false statements of fact, although the occasion may be abused and the protection of the privilege lost, by the publisher's lack of belief, or of reasonable grounds for belief, in the truth of the defamatory matter, by excessive publication, by a publication of defamatory matter for an improper purpose, or if the defamation goes beyond the group interest.' Thus the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff (Davis v. Hearst, 160 Cal. 143, 164, 116 P. 530; Snively v. Record Publishing Co., 185 Cal. 565, 577, 198 P. 1; Siemon v. Finkle, 190 Cal. 611, 618, 213 P. 954), or by any cause other than the desire to protect the interest for the protection of which the privilege is given. See Davis v. Hearst, supra, 160 Cal. 164, 116 P. 530; Prosser, Torts, 850; Restatement, Torts, § 603. Although there are situations where the protection of the interest involved may make it reasonable to report rumors or statements that the publisher may even know are false (see Prosser, Torts, 851; Restatement, Torts, § 602), ordinarily the privilege is lost if defendant has no reasonable grounds for believing his statements to be true. * * *"

As stated in § 607, Restatement, Torts:

"The concern which all citizens have in the proper conduct of public affairs by public officials requires that they have a wide freedom to discuss among themselves the public conduct of their officers and the qualifications of those who seek public office. Those who hold such offices and those who offer themselves as candidates therefor, by so doing subject their public acts to honest criticism even though it be extravagant and unjustified. To make the critic's protection depend not only upon the sincerity of his criticism but also upon its being such as a reasonable man might make would tend to prevent the public from knowing much essential criticism. The advantages gained by the freedom of discussion * * * are therefore sufficient to outweigh the danger that the reputation of public officers or candidates may suffer thereby."

This action came on regularly for trial before the Court without a jury and the Court, having heard and considered the testimony and the cause having been submitted for decision, now finds the facts and states conclusions of law as follows:

### Findings of Fact.

As to the First Cause of Action:

1. That plaintiff Ruth L. Reynolds, at the time of the filing of the complaint herein, was a citizen of the State of Utah, and defendant Samuel S. Arentz a citizen of the State of Nevada; that the matter in controversy exceeds exclusive of interest and costs the sum of $3,000.

2. That at all of the times mentioned in the complaint plaintiff was the duly appointed, qualified and acting County Nurse in and for the County of Lincoln, State of Nevada.

3. That on the 16th day of April, 1951, the defendant called a special meeting of the Chamber of Commerce of the unincorporated town of Pioche, County of Lincoln, State of Nevada; that at said

meeting a resolutions committee was appointed; that the defendant Samuel S. Arentz was Chairman of said committee; that on the 16th day of April, 1951, the said resolutions committee prepared the following resolution concerning the plaintiff:

"Whereas it appears that the County Nurse has engaged in activities detrimental to the best interests of a large section of the County, and

"Whereas such actions have engendered widespread dissatisfaction with the County Nurse.

"Now Therefore, be it resolved, that the Board of County Commissioners be petitioned to take such action as is within its power, to have the present County Nurse transferred or discharged and

"Be It Further Resolved, that a committee of the Pioche Chamber of Commerce be appointed to meet with the County Commissioners and transmit the above resolution of the Chamber with such other supplemental information on the above subject as may be available."

4. That the said committee thereupon presented and published the said resolution to the Chamber of Commerce which adopted said resolution; that the County Nurse referred to in the resolution is the plaintiff Ruth L. Reynolds.

5. That it was not true that plaintiff had engaged in activities detrimental to the interests of a large section of any portion of the county and that it is not true that she engaged in actions as County Nurse which have engendered dissatisfaction with her as such County Nurse; that plaintiff did not make the complaint to the State Board of Medical Examiners and that she had no part in bringing about the investigation of the Pioche Hospital.

6. That defendant Samuel S. Arentz, at all of the times mentioned in the complaint, was Superintendent of the Combined Metals Reduction Company which employed about 400 men in the area; that among his duties he was charged

with dealing with labor organizations, providing housing, taking care of medical contracts and taking care of the safety, health and welfare of the employed men and their families. Pioche is a community which depends almost entirely upon the mining industry. Defendant Arentz in his capacity as Superintendent of the reduction company assisted in the improvement of the Pioche Hospital and Clinic; draftsmen and engineers of his company prepared the plans and specifications for improving the hospital; the construction work was done by the construction crew of the company, the cost thereof being charged to Dr. Fortier, the then owner. The reduction company contributed $5,000 to $7,000 to the improvement of the hospital. At the times mentioned in the complaint the hospital was owned by the Pioche Mutual Benefit Association, a non-profit organization organized to provide hospital and surgical needs. The mining companies of the district took active interest in the operation and maintenance of the hospital.

7. That about March 22, 1951, Joseph M. Williams, an investigator in the employ of the Nevada State Board of Medical Examiners, entered upon an investigation of a complaint that E. E. Wolfle, Administrator of the hospital, and Dr. Mathes, the sole physician and surgeon connected with the hospital, had engaged in unethical or unlawful medical practices, namely, that with the knowledge and consent of Dr. Mathes, E. E. Wolfle practiced obstetrics and administered anesthesia and otherwise conducted himself as a medical practitioner. At the conclusion of his investigation, Mr. Williams presented his findings to the District Attorney, Roscoe S. Wilkes, and requested a criminal complaint.

8. That the defendant in the preparation and presentation of the said resolution to a public meeting of the Chamber of Commerce was not actuated by actual malice or a purpose to injure the plaintiff in her business, occupation or profession.

9. That the defendant, in assisting in the preparation of said resolution and the presentation of the same to the public meeting of the Chamber of Commerce, acted in good faith and had reasonable grounds for believing the subject matter of said resolution to be true; that the defendant had an interest and duty in respect to the matters referred to and contained in said resolution, and that the members of the Chamber of Commerce and the residents of Pioche and the surrounding area to whom the resolution was addressed had a corresponding interest and duty. That the matters contained in said resolution concerned the plaintiff Ruth L. Reynolds in her capacity as County Nurse and as a public servant.

10. That it is not true that the plaintiff was involved or connected with any attack on the Pioche Hospital and Clinic; that she did not bring about the investigation conducted in behalf of the State Board of Medical Examiners and had no part therein except that she did aid the investigator in his efforts to interview people of the community in regard to the alleged unethical practices; and also, that all of the activities of the plaintiff as County Nurse referred to in said resolution were consistent with her duties as County Nurse and in the interests and welfare of the public health of the community and that she did not violate the responsibilities or duties of County Nurse.

As to the Third Cause of Action:

1. That the findings of fact numbered 1 to 7 inclusive as to the first cause of action are hereby adopted as the Court's findings of fact as to plaintiff's third cause of action, and by reference are hereby made a part hereof.

2. That the defendant joined in the presentation of the aforesaid resolution to the Board of County Commissioners of Lincoln County, State of Nevada, at a special meeting of said Board held on the 8th day of May, 1951.

3. That at the meeting of said Board of County Commissioners the defendant made the oral statement set forth in the complaint as Paragraph III of plaintiff's third cause of action.

4. That the defendant, in assisting in the preparation of said resolution and the presentation of the same to the public meeting of the Chamber of Commerce and in making the oral statement to the Board of County Commissioners, acted in good faith and had reasonable grounds for believing the subject matter of said resolution to be true; that the defendant had an interest and duty in respect to the matters referred to and contained in said resolution, and that the members of the Chamber of Commerce and the residents of Pioche and the surrounding area to whom the resolution was addressed had a corresponding interest and duty. That the matters contained in said resolution and statement concerned the plaintiff Ruth L. Reynolds in her capacity as County Nurse and as a public servant.

5. That the defendant, in the presentation of the said resolution to a meeting of the Board of County Commissioners and in making the said oral statement to the same meeting of the Board of County Commissioners, was not actuated by actual malice or a purpose to injure the plaintiff in her business, occupation or profession.

6. That it is not true that the plaintiff was involved or connected with any attack on the Pioche Hospital and Clinic as charged in said statement; that she did not make the complaint referred to therein. That she did not bring about the investigation conducted in behalf of the State Board of Medical Examiners and had no part therein except she did aid the investigator in his efforts to interview people of the community in regard to the alleged unethical practices; and also, that all of the activities of the plaintiff as County Nurse, referred to in said resolution or in said statement, were consistent with her duties as County Nurse and in the interests and welfare of the public health of the community and that she did not violate the responsibilities or duties of County Nurse as charged by the defendant.

### Conclusions of Law.

From the foregoing facts the Court concludes, as to each of the first and third causes of action, as follows:

1. That the matters and things complained of in each of the first and third causes of action were defamatory and that such defamatory matters tended to and did injure the plaintiff in her business, occupation and profession, and were libelous per se.

2. That the defendant, in assisting in the preparation of said resolution and the presentation of the same to the public meeting of the Chamber of Commerce and in making the oral statement to the Board of County Commissioners, acted in good faith and had reasonable grounds for believing the subject matter of said resolution to be true; that the defendant had an interest and duty in respect to the matters referred to and contained in said resolution, and that the members of the Chamber of Commerce and the residents of Pioche and the surrounding area to whom the resolution was addressed had a corresponding interest and duty. That the matters contained in said resolution and statement concerned the plaintiff Ruth L. Reynolds in her capacity as County Nurse and as a public servant, and were privileged.

3. That the plaintiff is not entitled to recover damages from the defendant by virtue of any matters alleged in either her first or third cause of action.

4. That defendant is entitled to recover his costs herein expended or incurred.

Let judgment be entered accordingly.