**Robert Joseph MOORE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 700–69.**

United States Court of Appeals,
Tenth Circuit.

April 16, 1971.

Margaret W. Jordan, for appellant.

Robert J. Roth, U. S. Atty. (Glen S. Kelly, Asst. U. S. Atty., on the brief), for appellee.

Before HILL and SETH, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

The defendant-appellant herein was convicted of causing to be transported in interstate commerce a falsely made, forged, altered or counterfeited security, contrary to 18 U.S.C. § 2314. The indictment charged that on or about December 21, 1968, in the District of Kansas, defendant wilfully, unlawfully and knowingly and with fraudulent intent

transported and caused to be transported in commerce from Lawrence, Kansas to Cape Girardeau, Missouri, a falsely made, forged, altered and counterfeited security, a check dated December 18, 1968, in the amount of $195.75, payable to Robert Moore, purportedly signed by Lyman Farrow, drawn on the Farmers and Merchants Bank, Cape Girardeau, Missouri, and he then knew the check to have been falsely made, forged, altered or counterfeited.

On December 21, 1968, the check in question was passed at the Howard Johnson Restaurant on the Kansas turnpike near Lawrence, Kansas. It was deposited by Howard Johnson's and was in due course forwarded to the Farmers and Merchants Bank in Cape Girardeau where it was presented for payment. It was not paid because the signature differed from that of Lyman Farrow, the purported drawer, and also because the account in question had long since been closed. It had been a business account of Lyman Farrow for whom the defendant had been employed some time previously. During the period of employment defendant resided in the home of Farrow and helped him and had performed labor in Farrow's sawmill. The checks had been stored in a desk located in the kitchen of Farrow's home. Farrow's wife later told him that these checks (and there were a number of them) had been stored in the attic. However, in January 1969, Farrow noticed some of these checks on top of the refrigerator in the kitchen close to the place where they had previously been stored and where his office was located. Farrow testified that the defendant had visited him in his office and home during the year 1968, not too long before the checks were written.

Defendant made little effort to disguise his participation; the check in question was made payable to "Robert Moore", and hence the authorities were seeking the defendant and apprehended him on February 6, 1969, at the Wyandotte County Jail. The defendant was advised of his right to remain silent and also of his right to have a lawyer present.[1] He told the agent that he did not wish to have a lawyer present. He proceeded to make an oral statement in which he acknowledged that he had entered the home of Farrow, had picked up the checks, had written a number of them (including the one in question) and had cashed them at various places in Missouri, Kansas and Texas. Defendant identified the check which is described in the indictment as the one which had been passed at the Howard Johnson Motel at Lawrence, Kansas.

Other evidence introduced at the trial included the opinion of an F.B.I. handwriting expert who testified that the endorsement on the check was the signature of the defendant, based on a comparison with known handwriting specimens which had been obtained by the agent who took the statement.

The Government also introduced acknowledgments by the defendant that he had passed other checks in Cape Girardeau, Missouri, as well as at Kansas City, Kansas. He further admitted that he and his companions had travelled to Amarillo, Texas, and had there cashed a check, and another at Lubbock in the same amount as the one which had been passed at Lawrence, Kansas.

Various points are raised by the defendant on this appeal, including 1) the introduction of evidence showing opportunity to steal the checks and having to do with offenses other than that charged in the indictment; 2) the receipt by the court of the defendant's written waiver of rights obtained by the F.B.I. agent who questioned him; and 3) alleged insubstantiality of the corroborating evidence in support of the confession.

■■ Contrary to the contention of the defendant, we see no error in the court's receiving the evidence having to do with acquaintanceship between Far-

---

1. There is some indication that the accused may have had a lawyer, but the record is unclear as to this.

row and the accused. To be sure, this was circumstantial evidence which established that the defendant knew the house and layout of Farrow and was present in the house and in the vicinity where the checks were stolen. Standing alone, this, of course, would not carry any weight; however, when considered with the other facts it was a relevant circumstance which tended to furnish independent corroboration. Nor do we see any error in allowing the agent to testify to the defendant's admissions or confessions that other checks similar to the principal one were passed at similar times and as part of a continuous check passing transaction extending from Cape Girardeau west and south.[2]

The trial judge cautioned the jury that this evidence was received for a limited purpose and no error is asserted in connection with the instruction which was given.

■ There is adequate basic corroborating evidence to support the statement and justify submission of the case to the jury. This evidence consisted of the proof that the check was indeed presented; that it was on an account which was closed; that the signature of the purported drawer was a forgery and that it was, of course, dishonored when presented to the bank.

In addition, a handwriting expert testified that the defendant had endorsed the check in question. It was not, of course, necessary to identify the accused with the offense independent of the confession. However, this handwriting testimony did establish this fact.[3]

■ We perceive no error resulting from receiving the confession in view of the testimony of the agents that he fully advised the accused as to his rights and the court's finding that there was a knowing waiver.

■ One contention which is here made by defendant's counsel is that the agent undertook to advise the defendant as to his Rule 20 rights relative to the Texas violations and did so incorrectly. We do not approve of the practice of an interrogating agent undertaking to give legal advice to an accused. However, we do not see that this resulted in prejudice here. Counsel intimates that this had something to do with the signing of the confession waiver, but no such connection is shown. It was unnecessary for the court to instruct the jury concerning this matter (as counsel contends) since it is not shown to have had any relevancy.

The judgment of the district court is affirmed.

2. No particular mode of proof is required although it has been held by this Court (when it was in the 8th Circuit) that the evidence must be clear and convincing and not merely suspicious circumstance. Gart v. United States, 294 F. 66 states:

The scope and purpose of testimony concerning similar offenses is limited * * *. Only in exceptional cases is the proof of such transactions admissible. Where a case falls within the exception, the proof must be clear and convincing. It will be unnecessary to discuss the point in this case as to whether or not this line of testimony fell within the exception to the general rule governing the proof of similar of-

fenses, for the reason that in the case at bar we have no proof of an offense, but merely proof of a suspicious circumstance.

See also, Zamora v. United States, 369 F.2d 855 (10th Cir. 1967); Kraft v. United States, 238 F.2d 794 (8th Cir. 1956); Weiss v. United States, 122 F.2d 675 (5th Cir. 1941).

3. Yarbrough v. United States, 309 F.2d 936 (10th Cir. 1962); Kelly v. United States, 246 F.2d 864 (10th Cir. 1957); Braswell v. United States, 224 F.2d 706 (10th Cir. 1955), cert. denied, 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752 (1955).